On appellant's reconsideration filed April 15, petition allowed, former opinion (72 Or App 782, 696 P2d 1134 (1985)) withdrawn; affirmed May 22, reconsideration denied July 12, petition for review denied July 30, 1985 (299 Or 583)

BECK,
*Respondent,*

*v.*

CROFT,
*Appellant.*

(A8202-00832; CA A31114)

700 P2d 697

Cynthia L. Barrett, Portland, for petition.

Daniel Hoarfrost, Portland, contra.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant Croft (defendant) petitions for reconsideration of our order dismissing his appeal for want of a judgment as to all parties. *Beck v. Croft,* 72 Or App 782, 696 P2d 1134 (1985). We have determined that, although there is no one document resolving plaintiff's claims against the various defendants, there are separate judgments as to each of them. We therefore allow the petition for reconsideration and withdraw our previous dismissal. Defendant's appeal is from a judgment after a jury verdict for plaintiff on plaintiff's claim for special, general and punitive damages for intentional interference with an economic relationship. On the merits, we affirm.

Defendant is the former president and present executive director of the Oregon Soccer Football Association (OSFA), an affiliate of the United States Soccer Federation (USSF).[1] Plaintiff has played on teams in OSFA leagues and, since an injury some years ago affected his playing ability, has acted as a referee for OSFA-sanctioned games. In early 1981, the USSF appointed him State Referee Administrator (SRA) at the recommendation of OSFA and defendant. Plaintiff's position as the SRA was unpaid. His duties were to supervise the training, selection and rating of referees in Oregon, but not their assignment to specific games or payment for their services. Plaintiff believed that, as the SRA, he was directly under USSF authority and was independent of OSFA, except that OSFA received half of the fees which referees paid for registration.

After becoming the SRA, plaintiff became concerned that referee rating was being done improperly and that referee files were located in the OSFA office instead of in the SRA's possession; he was also unsure whether referee registration fees were being properly distributed. On the first weekend of April, 1981, he and a friend (who was also a referee) went to the OSFA office and removed the files, leaving a note telling defendant of their action.[2] Defendant, after reading the note,

---

[1] The other defendants were members of the OSFA board at the times in dispute. All claims against them were dismissed during the trial, and judgments were entered afterwards.

[2] Plaintiff entered the office by using a key which defendant had authorized him to have made.

called plaintiff and demanded that he return the records. Plaintiff refused but did mail defendant some material in the files which was unrelated to the SRA's activities.

Defendant brought up plaintiff's actions at the May OSFA board meeting; the board then invited plaintiff to attend its June meeting. Plaintiff did so, but he declined to participate, because he denied the board's jurisdiction over him as SRA and because the board would not allow two witnesses he brought to observe the proceedings or to testify. The board then suspended plaintiff as a referee until he returned the files. The USSF thereafter replaced plaintiff as the SRA, and plaintiff turned over the files to his successor in September.

Plaintiff hoped to become a referee in professional soccer. He had worked as a goal judge at several games for the North American Soccer League (NASL) during its 1980-81 indoor season. That was an entry level position, with the possibility of working later as a fourth official for the outdoor season. A fourth official is a trainee position, with the potential for moving up to line judge or referee. The NASL had the highest domestic positions available for a soccer referee.

In October, 1981, Keith Walker, the supervisor of NASL officials, told plaintiff to come to a clinic in Portland in early November so that he could be evaluated for rehiring for the 1981-82 indoor season. Before the clinic occurred, defendant called Walker and told him that OSFA had suspended plaintiff as a referee. When plaintiff came to the clinic, Walker met him at the door and told him that the NASL could not hire him until the suspension was resolved; the NASL, also a USSF affiliate, had to honor the OSFA's action. Walker testified by deposition that he would have hired plaintiff for the indoor season if it had not been for the suspension, that plaintiff's potential for advancement was good, but that plaintiff's opportunity had passed by the time of the trial because of the NASL's loss of several of its west coast franchises, including the Portland franchise.

Defendant had not mentioned plaintiff's suspension to the board since June, but after his conversation with Walker he brought it up at the November and December

OSFA meetings. In December, the board determined to suspend plaintiff for a total of two years. Following the suspension and Walker's revelations, plaintiff brought this action.

Defendant first argues that the court erred in failing to instruct the jury that plaintiff could recover only if he proved that defendant, in notifying Walker of plaintiff's suspension, acted *solely* to harm plaintiff and did not act in any way for the benefit of OSFA. Defendant also assigns as error the court's denial of his motions to dismiss and for a directed verdict, both made on the same ground. The court's instructions allowed plaintiff to recover if he showed that defendant acted with *the primary motive* to harm plaintiff, even if defendant acted in part to benefit OSFA. Defendant asserts that, under *Welch v. Bancorp Management Services,* 296 Or 208, 675 P2d 172 (1983), *modified* 296 Or 713, 679 P2d 866 (1984), the "sole motive" test is required.[3] Defendant is correct on the law in the abstract, but the *Welch* rule is irrelevant to this case.

■ The privilege which *Welch* and similar cases recognize is that a corporate officer, advisor or other agent who induces the corporation to breach a contract is liable to the other party to the contract for intentional interference with an economic relation only if benefit to the corporation played no role in the officer's action. Defendant was the agent of OSFA, not of USSF or NASL. Plaintiff had no contractual relationship or opportunity with OSFA, and he does not claim that defendant acted to deprive him of one. Rather, plaintiff's opportunity was with NASL. Defendant was not an officer, agent or advisor of NASL, and he had no duty to protect its interest or privilege to advise it. He was an outsider with regard to plaintiff's opportunity with NASL and is subject to the same potential liability for his actions as any other outsider would be. Whether he acted on behalf of OSFA would be relevant only to determine whether OSFA is also liable for plaintiff's damages, an issue which plaintiff did not raise.[4] Whether or not defendant acted in part for OSFA's benefit, he could not have acted for NASL's. The court did not err in

---

[3] *Welch* was decided after the trial of this case, but defendant adequately raised the issue during the trial.

[4] Defendant does not assert that he was privileged to act as he did because OSFA and NASL are both USSF affiliates.

denying defendant's motions and in refusing to give his requested instructions.[5]

■     Defendant next challenges the sufficiency of the evidence either to support the jury's decision that he had committed intentional interference with an economic relationship or to justify the damages awarded. There is evidence from which the jury could have found that defendant sought total control of OSFA activities, that he resented plaintiff's questioning of his authority, that he pushed through the June suspension despite a lack of authority in the OSFA and USSF rules for it, that the suspension should have ended when plaintiff turned over the records in September, that in fact no one considered the suspension thereafter until defendant revived it in order to deprive plaintiff of his NASL opportunity, that defendant pushed the two-year suspension through the board in December in order to justify retroactively his actions in talking with Walker and that defendant acted either to punish plaintiff for questioning his authority or to protect his financial interests in the referee fees because defendant was OSFA's paid executive director and the lessor of its office. There is also evidence from which the jury could find that plaintiff suffered emotional stress and loss of reputation because of defendant's actions.

■     The jury could have found that defendant committed all the elements of intentional interference with economic relationships: plaintiff had a prospective economic relationship with NASL, and defendant intentionally acted with an improper motive to prevent plaintiff from continuing the relationship. *See Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 582 P2d 1365 (1978). The evidence of loss of reputation and emotional harm was sufficient for general damages. If the jury accepted plaintiff's view of the case and of defendant's motivation, it could have found that defendant's actions were of the kind which should be discouraged by punitive damages. We find no error.

■     Defendant's final assignment of error concerns the court's failure to give a requested instruction concerning

---

[5] Defendant also assigns as error the trial court's failure to grant his motion for judgment n.o.v; his motion for directed verdict raised the same issues as the motion for judgment n.o.v.

damages. The court had agreed to give the instruction, then unintentionally omitted it. Defendant, however, did not point out the court's lapse during the trial; indeed, he stated that he had no exception to that particular instruction. Under such circumstances, even assuming that the court erred, this is not an error for which we will reverse.

Petition for reconsideration allowed; former opinion withdrawn; affirmed.[6]

---

[6] Appellant's motion to amend judgment under ORCP 71 is moot.