Argued and submitted September 17, 1990, judgment for plaintiff Harm against defendant Central Life Assurance Company reversed and remanded; otherwise affirmed June 19, 1991

## Gary A. HARM,
### and Charitable Services, Inc.,
*Respondents,*

*v.*

## CENTRAL LIFE ASSURANCE COMPANY,
### and Wayne N. Anderson,
*Appellants.*

### (A8712-07699; CA A50910)

813 P2d 1103

Sally R. Leisure, Portland, argued the cause for appellants. With her on the briefs were G. Kenneth Shiroishi and Dunn, Carney, Allen, Higgins & Tongue, Portland.

David Slagle, Lake Oswego, argued the cause and filed the brief for respondents.

Before Deits, Presiding Judge, and Newman and De Muniz, Judges.

DEITS, P. J.

**DEITS, P. J.**

Defendants Central Life Assurance Company (Central) and Anderson appeal the judgment for plaintiff[1] in this action arising out of the termination of plaintiff's employment as an insurance salesman and agent for Central.

Plaintiff and Central entered into an employment agreement on January 1, 1985. It provided that plaintiff's compensation was to include certain bonuses and commissions, for which plaintiff was eligible if he remained Central's agent for various periods after the policies involved had been issued. The agreement provided for termination on the happening of certain specified events, for certain causes or, in the absence of cause, on 30 days written notice by either party. Under the relevant provisions of the agreement, payments of the bonuses and commissions that are the focus of the dispute were to cease on termination.

Anderson is Central's general agent for the Oregon and Southwest Washington area. He became concerned that plaintiff was diverting Central's business and one of its employees to other insurers. On November 6, 1987, Anderson gave plaintiff a written notification that "[m]y decision is to terminate you immediately for cause." The parties agree that Anderson's notice was "improper"; there was no cause, and Anderson had no authority to terminate the agreement between Central and plaintiff. After a period of unsuccessful negotiations between plaintiff and Anderson, plaintiff found other work. Anderson communicated with Central's head office and, on December 7, an officer of Central wrote plaintiff that, because he was no longer actively selling Central's products and services, his contract was terminated as of January 6, 1988, 30 days after the date of the letter.

■      Plaintiff then brought this action, claiming a breach of contract by Central and an intentional interference by Anderson with his contractual relationship with Central. The jury awarded plaintiff compensatory damages on both claims and also awarded punitive damages on the claim against Anderson. Both defendants appeal.

---

[1] Plaintiff Charitable Services, Inc., is designated as a party to the appeal, but none of the issues involves it or the judgment in its favor. That judgment is affirmed. The "Plaintiff" in this opinion refers to Harm.

Central's sole contention on appeal is that the trial court erred in various rulings by which the jury was allowed to consider as damages the bonuses and commissions that would not accrue until more than 30 days after plaintiff was notified of his termination. Central relies on cases from other jurisdictions, holding that, if a contract is terminable on a specified notice period but the notice of termination does not comply with contractual requirements, the "terminated" party's damages are limited to amounts that would have accrued during the notice period. *See, e.g., Maltby v. J.F. Images, Inc.,* 632 P2d 646 (Colo App 1981); *Annot.,* 96 ALR 2d 272 (1964). Central also argues that, by the terms of the employment agreement, plaintiff did not complete the periods of employment necessary to earn the bonuses and commissions.

Plaintiff relies on *Thompson v. Burr,* 260 Or 329, 490 P2d 157 (1971), where the employer had agreed to pay a bonus to the plaintiff in April, measured by his gross earnings for the previous calendar year. The employer fired the plaintiff on March 12, because he refused to give testimony favorable to the employer in a lawsuit, and he sued to recover the bonus. The employer argued that the agreement required that the plaintiff remain employed on the April payment date in order to receive the bonus. Therefore, it contended, he could not recover the bonus, even though he was employed at the end of the measuring year, because he was discharged before the payment date. The Supreme Court disagreed. It concluded that, although the employer could discharge the plaintiff at will,

"[t]here is ample authority to the effect that where the payment of a bonus is a matter of contract (as in this case), rather than a gratuity, such an agreement by an employer to pay a bonus to an employee may not be defeated by the employer by discharging the employee shortly before he has completed his eligibility for the bonus unless the discharge was for 'good cause' and that if such an employee is discharged 'without good cause' he is still entitled to payment of the bonus even if the employer did not act in bad faith." 260 Or at 334. (Footnote omitted.)

In *State ex rel Roberts v. Public Finance Co.,* 294 Or 713, 662 P2d 330 (1983), however, the court held that an employee who was discharged before his anniversary date, for

legitimate business reasons but not for cause, was not entitled to vacation pay that the employment contract made conditional on continued employment on the anniversary. The court distinguished *Thompson v. Burr, supra:*

> "The requirement that [the plaintiff in *Thompson*] be employed on April 15 was not a condition precedent to earning the compensation, but rather a payment date. Also in *Thompson* there were allegations and findings that the employee was not terminated for bona fide business reasons." 294 Or at 717.

■     Plaintiff does not appear to disagree with Central's contention that their agreement made completion of the requisite period of employment a condition precedent to receipt of the bonuses and commissions. Rather, he argues that, as a matter of law and under the jury's findings, he was entitled to the bonuses and commissions under the principle spelled out in *Thompson v. Burr, supra.* He reads *Thompson* to mean that, regardless of contractual provisions relating to termination and eligibility for compensation, an employer cannot escape compensating an employee by terminating him shortly before he would have become eligible. We do not read *Thompson* that broadly. It plainly makes the rule that it states contingent on the payment's being "a matter of contract." In any event, plaintiff's argument is contrary to the court's later decision in *State ex rel Roberts v. Public Finance Co., supra.* We conclude that the court erred as a matter of law by allowing the jury to consider the disputed amounts as damages.

We cannot determine from the record whether the bonuses and commissions for the period after the 30-day notice were the only damages sought or awarded. The record is unclear whether the payments that Central concedes were due, *i.e.*, any amounts that accrued during the notice period, were also awarded. We remand to the trial court to make that determination and to enter an appropriate judgment and to conduct whatever further proceedings may be necessary.

■     Anderson assigns error to the judgment against him on the interference with contract claim. He argues that the evidence was insufficient to support a finding for plaintiff.[2]

---

[2] Anderson moved for a directed verdict, and its denial is one of the rulings that

The potential liability of an agent for interference with a contract between a third party and his principal was explained in *Welch v. Bancorp Management Services,* 296 Or 208, 218, 675 P2d 172 (1983), *mod* 296 Or 713, 679 P2d 866 (1984):

> "An agent acting as a financial adviser is thus privileged to interfere with or initiate breach of the principal's contracts or business relations with third parties, as long as the agent's actions are within the scope of his employment and taken with an intent to further the best interests of the principal. If this two-prong test is met, it is immaterial that the agent or another principal also profits by the advice. However, when an agent-financial adviser acts against the best interests of the principal and acts solely for his own benefit, he is liable in tort for harm done to the other contracting party."

We later explained in *Beck v. Croft,* 73 Or App 673, 677, 700 P2d 697, *rev den* 299 Or 583 (1985):

> "The privilege which *Welch* and similar cases recognize is that a corporate officer, advisor or other agent who induces the corporation to breach a contract is liable to the other party for intentional interference with an economic relation only if benefit to the corporation played no role in the officer's action."

Plaintiff argues that there was evidence from which the jury could find that Anderson acted with an improper motive. Anderson argues that the evidence showed that he acted with the purpose of benefitting Central and not with an improper motive. We agree with plaintiff that there was evidence from which *an* improper motive could be found, including that Anderson attempted to force plaintiff to sell insurance through Anderson's own agency for Anderson's benefit. The question, however, is whether the evidence *compelled* a finding that Anderson *also* acted to benefit Central. If so, he had a "mixed motive" that would relieve him from liability under *Welch v. Bancorp Management Services, supra.*

Anderson testified that his motive was to benefit Central, and plaintiff offered no direct evidence that he did not act with that motive as well as with self-aggrandizing

---

he includes in his assignment of error.

ones. Plaintiff had the burden of proving the existence of an improper motive. The court said in *Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 209, 582 P2d 1365 (1978), that "the propriety of defendant's objective or motive is really part of plaintiff's case rather than an affirmative defense of 'privilege.' " However, it has not been decided whether a plaintiff has an additional burden in a mixed motive case of establishing that the defendant had no proper motives, as well as offering evidence of improper objectives. We conclude that a plaintiff does not have to present evidence other than its evidence of an improper motive in order to prove that a defendant was not motivated in part by proper objectives. The fact finder may infer from the existence of an improper motive that it was the defendant's only motive. Once there is evidence of both proper and improper motives, the trier of fact may find that the motives were all proper, all improper or a mixture of both. Therefore, plaintiff's evidence of improper motives was sufficient to support the presumptive finding here that Anderson's motives were improper in their entirety.[3]

■ Anderson also argues that, under *Sakelaris v. Mayfair Realty, Inc.,* 284 Or 581, 588 P2d 23 (1978), he cannot, as a matter of law, be held liable for interfering with the contract between plaintiff and their mutual principal. In *Sakelaris,* the court applied the principle that a "party to a contract cannot be liable for interference with that contract but only for breaching it," 284 Or at 588, and concluded that the plaintiff could not assert an interference claim against the defendants for diverting to themselves the entire payment from a third party that the plaintiff and the defendants had agreed they would divide. The court reasoned that there was a single or interrelated contractual relationship among the plaintiff, the defendants and the third party. Therefore, no tort claim could be based on the defendants' nonperformance of the alleged agreement to divide the payment by calling it interference with the plaintiff's right to receive the money from the third party.

This case differs in that there is an independent contractual relationship between plaintiff and Central to

---

[3] Anderson does not assign as error that the jury was not properly instructed on the legal standard.

which Anderson is not a party. If the premise of Anderson's argument is that, as a matter of law, there can be no claim by one agent against another for interference with the former's contractual or business relationship with their mutual principal, he offers, and we can conceive of, no reason why an agent should be less responsible for interfering with his principal's contract with a fellow agent than with a stranger. In *Petty v. Rogue Federal Credit Union,* 106 Or App 538, 809 P2d 121 (1991), and *Franklin v. PCC,* 100 Or App 465, 787 P2d 489 (1990), we held that the plaintiffs had failed to prove or to state the facts necessary to sustain claims against supervisors or coemployees for intentional interference with their employment relationships. However, those cases implicitly recognize that there *can* be such a claim. The court did not err in denying a directed verdict.

■　　　As part of the same assignment, Anderson argues that the court erred by submitting plaintiff's claim for punitive damages to the jury. He argues that "[p]unitive damages are only awarded where plaintiff proves malicious or wanton conduct" and that, here, there "was no proof of improper motives and no proof of malicious conduct." As we have held, there was evidence of improper motives. To the extent that Anderson's argument is meant to assert that there was no evidence of the facts necessary for an award of punitive damages, independently of his contention that there was no evidence to support the finding of an intentional tort, we disagree. *See 2-D's Logging v. Weyerhaeuser,* 53 Or App 677, 632 P2d 1319, *rev den* 292 Or 109 (1981).

Judgment for plaintiff Harm against defendant Central Life Assurance Company reversed and remanded; otherwise affirmed.