Submitted on record and briefs January 17, affirmed October 2, 1991

William GIORDANO,
*Respondent,*

*v.*

AEROLIFT, INC.,
*Defendant,*

*and*

W. Larry MAHAFFEY,
*Appellant.*

(87-2115; CA A63452)

818 P2d 950

Michael J. Gentry and Tooze Shenker Holloway & Duden, Portland, filed the brief for appellant.

James M. Brown and Enfield, Guimond & Brown, Salem, filed the brief for respondent.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

---

* Joseph, C. J., *vice* Newman, J., retired.

## DEITS, J.

This is an action for intentional interference with an employment contract. Plaintiff was employed by defendant Aerolift, Inc. (Aerolift), in various positions relating to the design, construction and testing of air ships that were being developed to perform cargo lifts with higher payloads at lower costs than conventional helicopters. Mahaffey (defendant) was employed by Aerolift as chief operating officer. Plaintiff alleges that defendant intentionally and wrongfully interfered with his employment contract by causing him to be fired. The jury returned a verdict for $5,000 in general damages and $20,000 in punitive damages.[1] Defendant assigns error to the court's denial of his motion for directed verdict, denial of his motion to strike the allegation of improper motives and of his motion to amend his amended answer to deny the existence of an implied obligation of good faith and fair dealing in the employment contract and to the giving of an instruction on that issue. We affirm.

■ Defendant argues that the trial court should have granted his motion for directed verdict. He contends that a party to a contract cannot be liable for tortious interference with that contract. He asserts that, as a managing officer of Aerolift, he is a party to Aerolift's contract with plaintiff and, therefore, cannot be liable for interference with that contract. He relies on *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 733 P2d 430 (1987), in which the Supreme Court held that a corporate employer may not be liable in its role as a plaintiff's employer for interfering with the employment contract. The court explained:

> "[The corporation], as a party to the contract, cannot be liable for interference with that contract. If the rule were otherwise, every discharge not otherwise 'wrongful' would become a potential contractual interference claim. The Restatement (Second) of Torts §§ 766 to 766C, which we have cited in the past, requires that defendant's alleged interference involve a relationship between plaintiff and a third party." 302 Or at 625. (Footnotes omitted.)

---

[1] Plaintiff also received a judgment against Aerolift for breach of contract. Aerolift has not appealed that judgment, and all references to "defendant" in this opinion refer to Mahaffey.

Defendant contends that that rationale applies here. We disagree. The rationale is that an employer as an entity cannot interfere with its own contract. Defendant is not plaintiff's employer and is not a party to the employment contract. Moreover, defendant's argument was implicitly rejected in *Welch v. Bancorp Management Services,* 296 Or 208, 675 P2d 172 (1983), *mod* 296 Or 713, 679 P2d 866 (1984), and other cases that hold that, under certain circumstances, an officer or employee can be liable for interfering with his employer's contract with a third party. The necessary premise of those cases is that the employer and the employee do not stand in the same posture with respect to the contract. As a party, the employer can only breach it. *See Sakelaris v. Mayfair Realty, Inc.,* 284 Or 581, 588 P2d 23 (1978). As a non-party, however, an employee can interfere with it. We reject defendant's contention that he was a party to the contract and, therefore, was entitled to a directed verdict.

■      Defendant also makes the related argument that, as a "managing officer" of Aerolift, with authority to hire and fire employees, he should be immune for interference with an employment contract between it and plaintiff. The court said in *Welch v. Bancorp Management Services, supra,* 296 Or at 215:

> "[W]hen officers or employes of a corporation induce the corporation to breach its contract with a third party in order to serve interests other than those of the corporation, then the officers and employes are not immune from personal liability in an action for tortious interference with that contract."

Although defendant does not fully explain why that principle should be less applicable to managing officers than other officers, presumably the reasoning is that, at least in the context of employment contracts, there is no real distinction between the employer and the officer who handles personnel matters on its behalf. The employer acts only through that officer.

According to defendant, the issue is a matter of first impression in Oregon. It is true that the precise question has not been directly addressed in any Oregon appellate decision,

but the answer to it necessarily follows from *Welch v. Bancorp Management Services, supra,* and related cases. The principle of those cases is that an officer or employee ceases to enjoy immunity if his actions that interfere with his employer's contract are done without any motive to benefit his employer, but solely with improper motives or purposes. In other words, the immunity is lost because the officer is not acting in his employment capacity, but out of some improper motive of his own. It is inconsistent with that principle to say that that officer may, nevertheless, retain immunity on the theory that he is the *alter ego* of the employer that his actions are not designed to serve.

There is no reason why the rule should be different for managing officers. They are as capable as other officers of acting with improper motives to interfere with their employer's contracts. Defendant may be correct in suggesting that an officer with authority to hire and fire might less often than other officers have a demonstrable absence of motives to benefit the employer in connection with personnel decisions. However, that is a matter of proof. We reject the *per se* rule that defendant advocates.

Defendant also assigns error to the court's instructing the jury on the intentional interference claim. Because the claim properly went to the jury, it was not error to instruct on it. It cannot be said, as a matter of law, that a claim for intentional interference with a contract cannot be brought against a managing officer, and the trial court did not err by denying defendant's motion for directed verdict.

■　　Defendant next assigns error to the trial court's denial of his motion to strike the specification of improper motives. The pertinent allegation reads:

"On August 17, 1987, defendant W. Larry Mahaffey intentionally interfered with plaintiff's contract of employment for one or more of the following wrongful reasons or by one or more of the following wrongful means:

"(a)　Because defendant Mahaffey personally did not want plaintiff to work for defendant Aerolift, Inc. and not because plaintiff's performance was in any way detrimental to defendants;

"(b) By causing and directing production and preparation of false written statements alleging that plaintiff had been insubordinate and thereafter asserting said allegations of insubordination as grounds for termination."

Defendant argues:

"Oregon law recognizes a qualified privilege of a corporate officer to act on behalf of the corporation to terminate the employment contract and that under the evidence in this case the jury would be required to find that [defendant] was privileged because he was operating within the scope of his authority and with the intent to benefit Aerolift, so we say as a matter of law those findings are required. Therefore, as a matter of law, the jury could not—that specification could not be submitted to the jury."

Defendant incorrectly assumes that there was no evidence supporting the allegation of improper motives. Wagner, who was the personnel director for Aerolift during the period in issue, stated that defendant wanted to "get some information on [plaintiff] because he wanted to see about getting cause to fire him." She stated that defendant "did not like [plaintiff] and he didn't want him around." According to Wagner, defendant stated that he had heard that plaintiff was tapping Aerolift's telephones but that she did not believe that that was true. On another occasion, defendant asked Wagner to write up an "action form" on plaintiff, documenting that plaintiff believed that having to sign in and out on Aerolift's personnel log was "ludicrous and ridiculous." Although she had never heard plaintiff make that statement, and testified that defendant did not say that he had actually heard plaintiff make any such statement, she wrote up the form as if she had first-hand knowledge of the incident, because she believed that that was what defendant wanted. The form reads:

"This employee says the 'Daily Personnel Log' is 'ludicrous' and says it is 'ridiculous' and *will not* sign in and out. It is my opinion that this is insubordination, per Aerolift, Inc.'s company policies and procedures.

"By Carrie Wagner, Personnel"

Plaintiff testified that he never made those statements. The form was included in plaintiff's termination notice.

We conclude that there was evidence from which an improper motive could be found. Although there was also contrary evidence, that evidence does not compel a finding that defendant also acted to benefit Aerolift. As we said in *Harm v. Central Life Assurance Co.,* 107 Or App 708, 714, 813 P2d 1103 (1991):

> "[A] plaintiff does not have to present evidence other than its evidence of an improper motive in order to prove that a defendant was not motivated in part by proper objectives. The fact finder may infer from the existence of an improper motive that it was the defendant's only motive. Once there is evidence of both proper and improper motives, the trier of fact may find that the motives were all proper, all improper or a mixture of both. Therefore, plaintiff's evidence of improper motives was sufficient to support the presumptive finding that [the defendant's] motives were improper in their entirety." (Footnote omitted.)

The reasoning of *Harm* is equally applicable here. The jury was entitled to find from the evidence that defendant acted solely with improper motives when he terminated plaintiff's employment. Defendant also assigns error to the court's instructing the jury on the theory of improper motives. However, that assignment is premised on his contention that there was no evidence to support the theory, and it fails with that contention.

■       Defendant next argues that the court erred by denying his motion to amend his amended answer to deny the existence of an implied obligation of good faith and fair dealing in plaintiff's employment contract with Aerolift. Paragraph 7 of the complaint, which defendant admitted, reads:

> "Plaintiff's contract of employment with defendant Aerolift, Inc. was subject to and included an implied term of good faith and fair dealing."

Defendant explains that he admitted the truth of that allegation in his amended answer, because "that's what Oregon law appeared to be." He asserts, however, that *Sheets v. Knight,* 308 Or 220, 779 P2d 1000 (1989), "makes it clear that there is no such obligation" and argues that the trial court abused its discretion by denying him the opportunity to amend his amended answer accordingly.

■ A pleading may be amended once as a matter of right; leave to amend thereafter is within the discretion of the trial court. We will reverse only for an abuse of that discretion. ORCP 23A; *Jackson Co. v. Jackson Education Serv. Dist.,* 90 Or App 299, 303, 752 P2d 1224 (1988). In this case, defendant moved to amend after both parties had rested, offering as justification for his change of position a Supreme Court case decided more than one year before trial. Under those circumstances, it was not an abuse of discretion for the trial court to deny the motion.

■ Defendant also assigns as error that the court instructed the jury that the employment contract between plaintiff and Aerolift contained an implied obligation of good faith and fair dealing. Assuming that that assignment was preserved, given our discussion of the previous one, defendant does not persuade us that the instruction could have been prejudicial to him. He does not dispute that the court said nothing to suggest to the jury that he owed plaintiff an implied contractual duty of good faith. The obligation was Aerolift's, as the contracting party. Defendant argues, however, that the claim against him for interfering with the contract was "judged by the jury against the standard of what the contract" contained and, given his view that the implied duty of good faith was not part of the contract, "the verdict against him was tainted."

We do not agree that, under the instructions given, the jury could have drawn the inference that defendant hypothesizes. The claim was for intentionally interfering with the contract, because defendant did not want plaintiff to be employed by Aerolift on any terms; it is logically irrelevant to that claim what the terms of the contract were. Nothing in the instructions suggested otherwise.

Affirmed.