Argued and submitted February 16, Pease's motions to dismiss denied; judgment affirmed May 29, 1996

Frank A. BOERS,
*Respondent,*

*v.*

PAYLINE SYSTEMS, INC.,
an Oregon corporation,
and Phillip V. Barcellona,
*Defendants,*

*and*

A. Roger PEASE,
*Appellant.*

(9305-03217; CA A84876)

918 P2d 432

E. Joseph Dean argued the cause for appellant. With him on the briefs was Stoel Rives Boley Jones & Grey.

James M. Baumgartner argued the cause for respondent. With him on the brief was Black Helterline.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

Plaintiff was formerly a vice president, chief financial officer, and corporate secretary of defendant Payline Systems, Inc. (Payline). He was fired in early December 1992, effective December 31, 1992. In this action, he asserted claims against Payline for wrongful termination and against defendant A. Roger Pease (Pease), the president of Payline, and defendant Phillip V. Barcellona (Barcellona), Payline's executive vice president, for intentional interference with his employment contract. Plaintiff recovered judgments against Payline and Pease; the jury found in favor of Barcellona. Payline has dismissed its appeal from the judgment against it; we affirm the judgment against Pease.

We state the facts most favorably to plaintiff, who obtained a verdict in his favor. In February 1990, plaintiff discovered that Barcellona, who at the time was working for another employer, had wrongfully caused money that belonged to Payline to be deposited into his then employer's account. In March 1990, when Payline was considering hiring Barcellona, plaintiff reported that information to Pease. At a board of directors meeting that month plaintiff also recommended against hiring Barcellona. Despite that information, Pease hired Barcellona as of April 1, 1990, and retained him despite additional information that plaintiff discovered later that month.

In September 1992, an employee who was leaving Payline told two of its directors that he was concerned about Pease's and Barcellona's management of the company. The directors then asked plaintiff for information. In October, plaintiff prepared memoranda expressing his concerns about Barcellona, as part of which he described Barcellona's misapplication of money two and one-half years previously.

After Pease received copies of plaintiff's memoranda concerning Barcellona, he became cold towards plaintiff. He called a special board meeting in early November to give Barcellona an opportunity to defend himself. He did not notify plaintiff of the meeting, although as corporate secretary plaintiff normally attended board meetings. At least one director told plaintiff that Payline would fire Barcellona, but

the ultimate decision was to retain him. Soon after the special board meeting Pease decided to fire plaintiff; he did so in early December 1992. Plaintiff's employment formally terminated at the end of December.

After his termination, plaintiff brought this action, asserting claims against Payline for violation of ORS 659.550, the Whistleblower Law, and for common law wrongful discharge and against Pease and Barcellona for intentional interference with contract and intentional interference with prospective advantage. The jury awarded plaintiff compensatory and punitive damages against Payline and Pease.

■ The primary issues in this appeal arise from Pease's motions, which he makes directly to us, to dismiss plaintiff's claims on the ground that they do not state ultimate facts sufficient to constitute a claim. ORCP 21 A(8). Pease did not move for a directed verdict on that ground. In evaluating a motion to dismiss made for the first time on appeal, we do not restrict our review to the allegations of the complaint; rather we also consider any evidence at trial that would support amending the complaint to include elements of the plaintiff's cause of action that may be missing from the pleadings. *Richards v. Dahl*, 289 Or 747, 752, 618 P2d 418 (1980); *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 219, 493 P2d 138 (1972); *Beckett v. Computer Career Institute, Inc.*, 120 Or App 143, 145-46, 852 P2d 840 (1993); *see also Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 355, 788 P2d 428 (1990) (under ORCP 23 B, for all practical purposes pleading is automatically amended when issue not raised by pleading is tried by consent).

However, that does not mean, as Pease argues, relying on the broad language of some of these cases, that we should review the sufficiency of the evidence presented at the trial, not simply the sufficiency of the pleadings, in considering a motion to dismiss made for the first time on appeal. If he were correct, a party could obtain appellate review of the sufficiency of the evidence without having challenged it at trial, by a motion for directed verdict or otherwise. That is not consistent with normal appellate requirements.

■ The Supreme Court set out the proper procedure in *Fulton Ins.* When a defect in a pleading consists of an omission of a necessary fact that the pleader could have added by amendment, we look at the entire record when the pleading is attacked for the first time on appeal. If the omission did not result in surprise or prejudice or otherwise prevent a full trial of the real issues, and if the evidence disclosed the existence of a cause of action, we "will treat the case as though the question had been raised at the proper time and the pleadings amended accordingly." 261 Or at 219. Thus, in this case we look first to plaintiff's complaint; if it is adequate, we deny the motion. If it may not be adequate, we look to the evidence to fill any omissions in the complaint. That is not a review of the sufficiency of the evidence.

■ In his first motion to dismiss, Pease asserts that plaintiff failed to allege that he interfered with plaintiff's contract with Payline by improper means or for an improper purpose; proof of one of those things is an element of the tort of intentional interference with economic relations. *Uptown Heights Associates v. Seafirst Corp.*, 320 Or 638, 651, 891 P2d 639 (1995). In his second motion to dismiss, Pease asserts that, because he acted as president of Payline rather than as a third party who was a stranger to the contract when he fired plaintiff, he cannot have tortiously interfered with Payline's contractual relationship with plaintiff. These motions raise closely related points. We begin by considering the second.

■ Pease bases his second motion on the proposition that he cannot, as a matter of law, be liable for intentional interference because of his position as Payline's president. Plaintiff's complaint alleges all of the facts that are necessary to evaluate that proposition, and we do not, therefore, consider any evidence in deciding the second motion. For the following reasons, we reject Pease's argument.

■ A corporate agent who induces a corporation to breach a contract with another party cannot be liable for intentional interference with that contract if the agent acted in the scope of the agent's employment. In that situation, the agent *is* the corporation. While a party to a contract may

breach it, it is logically impossible for a party to interfere tortiously with its own contract. However, if the agent's sole purpose is one that is not for the benefit of the corporation, the agent is not acting within the scope of employment and may be liable. *See Welch v. Bancorp Management Services*, 296 Or 208, 215, 675 P2d 172 (1983), *on recons* 296 Or 713, 679 P2d 866 (1984); *Straube v. Larson*, 287 Or 357, 369-70, 600 P2d 371 (1979). The Supreme Court recently reemphasized this position in *McGanty v. Staudenraus*, 321 Or 532, 901 P2d 841 (1995), in which the plaintiff alleged that the defendant, "acting within the course and scope of his employment" had interfered with her employment contract with the corporation. That allegation in itself showed that the defendant could not be liable for intentional interference. 321 Or at 538-43.

■■ In *McGanty*, the Supreme Court reaffirmed the test for acting in the scope of employment that it established in *Chesterman v. Barmon*, 305 Or 439, 442, 753 P2d 404 (1988):

> " 'Three requirements must be met to conclude that an employee was acting within the scope of employment. These requirements traditionally have been stated as: (1) whether the act occurred substantially within the time and space limits authorized by the employment; (2) whether the employee was motivated, at least partially, by a purpose to serve the employer; and (3) whether the act is of a kind which the employee was hired to perform.' "
> *Quoted in McGanty*, 321 Or at 539 n 3.[1]

A managing officer of a corporation, including one with the authority to hire and fire, is subject to liability for intentional interference in the same way as any other corporate employee if the officer acts without any purpose to serve the employer but solely with improper motives or purposes. *Giordano v. Aerolift, Inc.*, 109 Or App 122, 125-26, 818 P2d 950 (1991).

■ Plaintiff alleged that Pease fired him "for the improper purpose to retaliate against plaintiff" for his actions in telling the directors about Barcellona's misconduct. That allegation is broad enough to admit evidence that Pease

---

[1] "Normally whether a party has acted within the scope of employment is a question of fact, albeit an ultimate fact." 321 Or at 539 n 3.

acted for personal purposes and had no motivation to serve Payline. If the jury could draw that inference from evidence that would be admissible under this pleading, it could also find that Pease had not met the second *Chesterman* test but had, instead, acted outside the scope of his employment when he fired plaintiff.[2] We therefore deny Pease's second motion to dismiss, because the pleading was sufficient.[3]

■ The issue in Pease's first motion to dismiss is whether plaintiff alleged that he acted with an improper purpose or by improper means. We first examine the allegations of plaintiff's complaint. Because that complaint is sufficient to allege that Pease acted with an improper purpose, we do not consider the evidence at trial. As amended at trial, the complaint alleged that Pease fired plaintiff for the improper purpose of retaliating against him for having reported Barcellona's alleged misconduct to two directors of Payline. In the trial court, the parties argued about whether the prohibition in ORS 659.550(1) against retaliation for reporting criminal activity covers reporting to an appropriate corporate superior as well as to law enforcement agencies. As plaintiff points out, however, the statute by its terms applies only to employers; it cannot, therefore, by itself support a cause of action against Pease. Because we hold that the allegation supports a finding that Pease acted with an improper purpose without regard to ORS 659.550(1), we do not need to consider the role that the statute might play in a claim against an employer.

If a jury believes that a defendant acted to injure the plaintiff, it can find that the defendant acted with an

---

[2] The fact that Pease exercised his power as a corporate officer when he fired plaintiff is not conclusive on whether he acted within the scope of his employment under the *Chesterman* standard. The jury could have found that Pease improperly exercised corporate authority when he fired plaintiff because he did not intend to benefit the corporation by his actions.

[3] In *Butler v. Dept. of Corrections*, 138 Or App 190, 195-98, 909 P2d 163 (1995), we held that the trial court erred when it failed to instruct the jury that it had to find that one defendant did not act in the scope of his employment in order to find him liable for intentional interference with the plaintiff's employment contract. We remanded for a new trial, thereby necessarily holding that the defendant, who at the time was the highest official in the department, *could* be liable for intentional interference. *Butler* does not support defendant's argument that a person with the power to hire and fire is immune from liability for that tort.

improper purpose. *Straube*, 287 Or at 361-62. A corporate officer acts with an improper purpose in firing an employee when the officer's sole purposes were "not to benefit the corporation's interest, but were instead self-serving or vindictive" and when the officer's purposes "are not intended to serve the principal." *RMS Technology, Inc. v. Stenbock*, 113 Or App 344, 347, 832 P2d 1260 (1992); *see also Welch*, 296 Or at 215; *Giordano*, 109 Or App at 126; *Harm v. Central Life Assurance Co.*, 107 Or App 708, 713-15, 813 P2d 1103 (1991). Indeed, under these cases evidence that the defendant did not act to serve the principal—which is sufficient to show that the defendant did not act in the scope of employment— may also be sufficient to show that the defendant had an improper purpose and thus may be liable for intentional interference.

In this case, the allegation that Pease acted to retaliate against plaintiff for reporting Barcellona's misconduct to the directors tends to show *both* that Pease did not act with a purpose to benefit Payline *and* that his purpose was to injure plaintiff for vindictive reasons. It is therefore sufficient to show that he acted for an improper purpose.[4]

Previous cases provide examples of what Oregon courts have held to be improper motives for a corporate superior's firing of a subordinate. In *Huston v. Trans-Mark Services*, 45 Or App 801, 609 P2d 848, *rev den* 289 Or 587 (1980), we held that a supervisor acted with an improper purpose when he induced the corporation to fire the plaintiff in retaliation for the plaintiff's criticism of the defendant's affair with the employee of a customer and of the effect that the affair had had on the operation of the office. In *Campbell v. Ford Industries, Inc.*, 274 Or 243, 546 P2d 141 (1976), the plaintiff alleged that the individual defendants induced the corporate defendant to fire him in retaliation for his

---

[4] Plaintiff had a written employment agreement through December 31, 1992; it was renewed automatically unless he received 90 days written notice of nonrenewal. Pease gave him that notice at the end of September 1992, explaining at the same time that Payline had decided to stop having written employment agreements but that plaintiff's employment would continue after the expiration of the written agreement. Plaintiff's status as an at-will employee after December 31, 1992, did not immunize Pease from liability for intentionally interfering with his relationship with Payline. *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 620-21, 733 P2d 430 (1987).

attempted exercise of his right as a stockholder to inspect corporate records. The Supreme Court held that a corporate officer or director who attempts to deter stockholders from exercising those rights in order to prevent the discovery of corporate misconduct has, as a matter of law, acted for personal advantage rather than to further the interests of the corporation. 274 Or at 257. In *Giordano*, the defendant fired the plaintiff simply because he did not want the plaintiff to work for the corporation. He created false information in order to justify the firing. We held that that evidence was sufficient to support a finding that the defendant had acted with an improper purpose. 109 Or App at 127-28.[5]

We turn to the remaining issues that Pease raises. He assigns error to the trial court's denial of his motion for directed verdict on plaintiff's claim for intentional interference with prospective advantage. Pease's attorney made this motion as part of a motion whose primary purpose was seeking a directed verdict for Barcellona, whom he also represented, on all of plaintiff's claims. The only portion of the motion that might seek a directed verdict on behalf of Pease refers solely to the interference with prospective advantage claim. The court submitted plaintiff's claims against Pease to the jury as "Interference with Plaintiff[']s Employment Relationship Claim," without distinguishing between interference with an existing contract and interference with a prospective contract. It did so because it thought that the two interference claims were redundant. Pease does not assign that ruling as error. There is no indication that the interference with prospective advantage claim played any independent role in the case. Even if the court's denial of a directed verdict was error, it was harmless, because the jury considered only one claim.

---

[5] Plaintiff also argues that ORS 659.550(1) establishes a public policy against retaliation for reporting criminal conduct and that such retaliation could show that Pease acted with an improper purpose because he violated that public policy. Plaintiff recognizes that the statute expressly creates liability only for employers and that he, therefore, does not have a direct claim against Pease under it. The allegation of an improper purpose was sufficient without consideration of the public policy issue. Pease does not assign error to the admission of evidence relating to the statute, nor did he ask for an instruction limiting its effect to plaintiff's claims against Payline. We therefore do not need to consider that issue in this case.

 The next assignment of error relates to the court's entry of judgment on the verdict and its failure to grant Pease's motion for new trial. As a general rule, a party may not assign the denial of a motion for new trial as error. *See Steel Products Co. v. FMD Corp.*, 282 Or 513, 519, 579 P2d 855 (1978); *Martin Engineering , Inc. v. Opton,* 277 Or 291, 295, 560 P2d 617 (1977); *Grage and Grage*, 109 Or App 311, 315, 819 P2d 322 (1991). Even if we may review this assignment, Pease failed to preserve the issue for our review. He asserts that the verdict against Payline is logically inconsistent with the verdict against him, because the first verdict must be based on a finding that he acted in the scope of his employment when he fired plaintiff, while the second verdict must be based on a finding that he did not act in the scope of his employment. However, he failed to object at the time that the jury returned the verdict.[6] The time to correct an allegedly inconsistent verdict is when the jury is still present and the court can resubmit the question. *Torbeck v. Chamberlain*, 138 Or App 446, 453, 910 P2d 389 (1996); *Marquam Investment Corp. v. Myers*, 35 Or App 23, 27-28, 581 P2d 545, *rev den* 284 Or 341 (1978). His motion for new trial was too late to raise the issue for the first time.

Pease argues that he could not have objected when the jury returned the verdict because the same attorney who represented him at the trial also represented Payline. Thus, the attorney had a conflict; he would have had to prefer one client over the other by objecting to the verdict. Rather, Pease argues, it was plaintiff's burden to point out the inconsistency. We question whether Pease's attorney faced an ethical dilemma; if the court had agreed with his objection, it would have instructed the jury to reconsider its verdict. There is no way to tell which client would have benefitted from that reconsideration, but one certainly would have. The attorney would not have preferred one client over the other. In any case, whether or not the verdict was inconsistent under our adversary system, it is not a prevailing plaintiff's role to challenge a verdict in the plaintiff's favor. *Cf. Building Structures, Inc. v. Young*, 131 Or App 88, 92-93, 883 P2d 1308

---

[6] We do not express any opinion on whether the verdict was in fact inconsistent.

(1994), *rev allowed* 320 Or 587 (1995) (although verdict was substantively defective, not simply inconsistent, the defendants had to object before the jury was excused to preserve their claim of error; plaintiff did not have to object). These assignments are without merit.

Pease's final assignment of error concerns the court's failure to give a requested instruction. The instructions that the court did give adequately covered the subject of that instruction.

Pease's motions to dismiss denied; judgment affirmed.