Argued and submitted February 14, affirmed June 11, petition for review denied
September 23, 1997 (326 Or 57)

Karen SIMS,
*Appellant,*

*v.*

SOFTWARE SOLUTIONS UNLIMITED, INC.,
an Oregon corporation,
and Mark A. Rodenbeck,
*Respondents.*

(C950678-CV; CA A92451)

939 P2d 654

Scott N. Hunt argued the cause for appellant. With him on the briefs was Richard C. Busse.

Thomas W. Sondag argued the cause for respondents. With him on the brief was Lane Powell Spears Lubersky LLP.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Plaintiff is a former employee of Software Solutions Unlimited (Software). She asserts claims against Software and its president, Mark Rodenbeck, for wrongful discharge and against Rodenbeck for intentional interference with economic relations. The trial court granted defendants' motion for summary judgment (ORCP 47), and plaintiff appeals. We affirm.

The following facts are undisputed. Plaintiff was employed by Software between January and November 1994. In April 1994, plaintiff filed an Internal Revenue Form W-5 with Software requesting the computation of an earned income credit (EIC) in her regular paychecks. Otherwise, she would have been required to file for the credit as part of her federal income tax return at the end of the year. In May 1994, plaintiff complained to the Internal Revenue Service (IRS) that Software had not implemented the request. Also, plaintiff was a party to a memo in July 1994 from several employees to Software complaining about the use of racial slurs by a supervisor to other employees. In November 1994, Software discharged plaintiff, and she filed this action in August 1995.

Defendants moved for summary judgment on the claims. They argued: (1) that they were entitled to summary judgment on the wrongful discharge claim because the court had previously ruled that plaintiff's complaint did not state facts sufficient to state a claim under ORCP 21 and that plaintiff's amended complaint had repled the same allegations; (2) that a claim for wrongful discharge could not lie against Rodenbeck because the tort of wrongful discharge lies only against an employer; and (3) that Rodenbeck, as an employee of Software, could not interfere with plaintiff's economic relations with Software as a matter of law, because he was acting within the scope of his employment.

Summary judgment is appropriate under ORCP 47 if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We review the record in the light most favorable to the nonmoving party to determine whether there are genuine issues of material fact regarding any element of the claim. In an affidavit in

support of his motion for summary judgment on the claims, Rodenbeck averred that before he discharged plaintiff, he consulted with his brother, the vice-president of the company, and that

"[i]n making the decision to terminate [plaintiff], we were motivated at least in part by the purpose to serve the best interests of Software Solutions. We were at all times acting within the scope of our employment as President and Vice-President respectively of Software Solutions."

Defendants also argued that plaintiff had conceded in her amended complaint that Rodenbeck was acting within the scope of his employment as a result of this allegation:

"FIRST CLAIM FOR RELIEF

"(Wrongful Discharge)

"* * * * *

"2.

"At all material times [Software] acted through agents and employees who at all material times acted within the course and scope of their agency and employment for [Software], including, for purposes of this claim Defendant Mark A. Rodenbeck.

"* * * * *

"SECOND CLAIM FOR RELIEF

"(Intentional Interference With Economic Relations)

"8.

"Plaintiff realleges paragraphs 1 through 6.

"9.

"At all material times, Defendant Rodenbeck was the President of Defendant Software. In the alternative, for purposes of this claim said Defendant acted solely for an improper purpose."

In contravention to defendants' motion, plaintiff offered evidence of statements made by Rodenbeck to Banducci, a former coworker, that he "did not like" plaintiff, that he "felt that she did not conduct her life very well and had too many personal problems," and that he considered the controversy about the earned income credit to have caused dissension among Software's employees. According to the affidavit, Rodenbeck told Banducci,

> "I have given [plaintiff] every break. The problem is that I made a mistake. I try to be a nice guy and give jobs to people that aren't qualified. I give them a position because they are friends with someone who works here. What I get in return is a troublemaker [who] calls the IRS and files a complaint, and what I need to do is get rid of the troublemakers."

Based on that evidence, plaintiff asserted that defendants' argument that there is no evidence that Rodenbeck was acting outside the scope of his employment is "flawed" because "there is evidence that [Rodenbeck] was motivated by a personal grudge," thereby creating a genuine issue of material fact as to his motivation in terminating her employment. Regarding the argument that she was bound by the admission in her pleading, plaintiff responded that she had pled and offered evidence based on an alternative claim, *i.e.*, that Rodenbeck had acted solely for an improper purpose and, therefore, beyond the scope of his employment. The trial court granted defendants' motions on both claims.

■■ The elements of a claim for intentional interference with economic relations are:

> "(1) The existence of a professional or business relationship * * *, (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages." *McGanty v. Staudenraus*, 321 Or 532, 535, 901 P2d 841 (1995).

In this case, the focus is on the third element, whether Rodenbeck was a "third party" to the employment relationship between Software and plaintiff.

In *McGanty*, the court held that an allegation of fact in a party's pleading was an admission that the fact exists as

stated and that when an employee is acting in the scope of the employee's employment, the employee is acting for the employer, and not as an independent entity. Accordingly, such an employee cannot be a third party for purposes of the tort of intentional interference with economic relations. *Id.* at 538.[1] The court also held that whether a party is a third party to a contract for purposes of the tort is a discrete element from whether the third party acted for an improper purpose or through improper means.

Plaintiff relies in part on our holding in *Boers v. Payline Systems, Inc.*, 141 Or App 238, 918 P2d 432 (1996). In that case, the plaintiff brought a claim against the president of a corporation for intentional interference with an employment contract after his employment with the corporation had been terminated. The plaintiff alleged that he had been fired by the president because he had furnished information about wrongdoing and mismanagement of the employer's business on the part of the executive vice president to the employer's board of directors and that the president had acted to cover up his own complicity in the wrongdoing. In support of a motion to dismiss plaintiff's complaint under ORCP 21, the president relied on the general proposition expressed in *McGanty* that a corporate agent who induces a corporation to breach a contract with another cannot be liable for intentional interference with that contract if the agent acted in the scope of the agent's employment.[2] We held that the general rule did not apply, because the plaintiff's allegations were broad enough to admit evidence that the president acted solely for his own purposes to cover up his alleged wrongdoing against the employer's interests.

---

[1] The proposition is based on the understanding that, while a party to a contract may breach the contract, it is logically impossible for a party to that contract to interfere tortiously with its own contract. When an agent is acting for a principal regarding a contract to which the principal is a party, the acts of the agent are the acts of the principal and, therefore, the agent *is* the principal for purposes of the claim of interference.

[2] In *Chesterman v. Barmon*, 305 Or 439, 442, 753 P2d 404 (1988), the court explained that the traditional requirements for determining whether an employee was acting within the scope of employment include whether the act occurred substantially within the time and space limits authorized by the employment, whether the employee was motivated, at least partially, by a purpose to serve the employer, and whether the act was of a kind that the employee was hired to perform.

In *Schram v. Albertson's, Inc.*, 146 Or App 415, 934 P2d 483 (1997), we followed our reasoning in *Boers*. In that case, the plaintiff alleged that two supervisors acted to force the plaintiff to leave her employment in retaliation for her report to her employer about the activities of another supervisor. We held that, under the circumstances, a jury could find that the supervisors were not acting on behalf of their employer but solely for their own benefit. This case is not controlled by our holdings in *Boers* and *Schram*, because Rodenbeck acted to benefit his employer, as will be amplified below.

The relationship between Software and plaintiff was an at-will employment relationship, and it is uncontroverted that Rodenbeck had the authority to fire plaintiff without cause on behalf of Software. According to plaintiff's evidence, he fired her because he considered her to be a troublemaker regarding Software's business practices. Unlike the defendants in *Boers* and *Schram*, who acted in pursuit of their individual interests and apart from or contrary to the interests of their employers, plaintiff's own evidence is that Rodenbeck acted in the interests of his corporate employer to rid it of an employee whom he perceived to have caused dissension. Indeed, plaintiff's argument to this court makes the point:

> "[T]he Banducci Affidavit, when read in its entirety, clearly raises a question of fact as to whether defendant Rodenbeck acted out of a *personal vendetta* against plaintiff because she was a trouble maker who complained to the IRS or complained about racial discrimination in the workplace." (Emphasis in original.)

Under the doctrine of *respondeat superior*, an employer is liable for the torts of an employee when the employee is acting within the scope of the employment. The rule is intended to ensure that employers will be held liable only for harm resulting from activity from which they receive benefit. *Stanfield v. Laccoarce*, 284 Or 651, 655, 588 P2d 1271 (1978). In the context of the tort of intentional interference with an economic relationship, the antithesis exists, *i.e.*, the employer's interests are not intended to be benefitted by the interference. Thus, so long as the actor's actions are within the scope of his authority and are undertaken at least in part to further the best interests of the employer, it is immaterial

that the actor has additional motives. In contrast, when the actor acts against the best interests of the employer or *solely* for his own benefit, he could be held liable in tort for the harm done to the other contracting party. *Welch v. Bancorp Management Services*, 296 Or 208, 218, 675 P2d 172 (1983).

In the light of the above policies, the evidence that Rodenbeck had a "personal vendetta" against plaintiff from which the act of terminating plaintiff's employment flowed is of no legal consequence. His actions, according to plaintiff's own evidence, were done, at least in part, to benefit Software by terminating the employment of an at-will employee who was deemed a "troublemaker." There is no evidence that Rodenbeck acted *solely* for his own interests.[3] Therefore, Rodenbeck cannot be a "third party" to the employment relationship between plaintiff and Software as a matter of law. We conclude that the trial court correctly granted summary judgment to Rodenbeck on plaintiff's claim for intentional interference with economic relations.

■ Plaintiff also assigns error to the court's ruling on her claim for common-law wrongful discharge. Her assignment of error states:

"The lower court erred in granting defendant's motion for summary judgment on plaintiff's wrongful discharge claim based upon its prior ruling granting defendant's motion to strike."

The threshold issue raised by defendants on appeal is whether plaintiff's assignment of error to the summary judgment on the claim for wrongful discharge is preserved under ORAP 5.45(2). In her original complaint, plaintiff alleged:

---

[3] In *Harm v. Central Life Assurance Co.*, 107 Or App 708, 813 P2d 1103 (1991), we held that a motion for a directed verdict under ORCP 60 was properly denied when there was evidence of both proper and improper motives and a trier of fact could infer from the evidence of the improper motive that it was the sole motive. *See also Mekkam v. Oregon Health Sciences Univ.*, 126 Or App 484, 493, 869 P2d 363 (1994) (holding similarly). Here, plaintiff's evidence in contravention of Rodenbeck's evidence that he was acting within the scope of his employment is, at best, evidence of a mixed motive. A trier of fact could not reasonably infer from Banducci's affidavit that Rodenbeck acted solely in pursuit of an interest unrelated to Software's business.

"4.

*"Prior to her termination, on or about April 24, 1994, Plaintiff filed with Defendants an Internal Revenue Service form W-5 requesting that she receive the earned income credit to which she was entitled, pursuant to IRC section 32 and section 3507, on each paycheck. Subsequently, she complained to Defendants about not receiving the earned income credit payments on her paycheck. In May 1994 she reported Defendants' conduct to the Internal Revenue Service and informed Defendants she had done so. Plaintiff had an important employment-related right to these payments and a public duty to report Defendants' failure to comply with the earned income credit program.* In July Plaintiff signed a memorandum in which she and others opposed race discrimination.

"5.

"Defendants terminated Plaintiff. A substantial factor in Defendant Software's termination of Plaintiff was that she resisted race discrimination *and / or that she had opposed Defendant Software's non-payment of the earned income credit payment and / or had complained to the Internal Revenue Service about Defendant Software's nonpayment and noncompliance with the earned income credit program.*" (Italics in original.)

Software moved to strike the italicized portions of the complaint pursuant to ORCP 21 E on the ground that they were "irrelevant and frivolous." Software argued to the trial court that "none of these grounds support[s] a wrongful discharge claim under Oregon law." The trial court granted Software's motion to strike and gave plaintiff leave to amend her complaint. Her amended complaint alleges, in part:

"4.

"Prior to her termination, on or about April 24, 1994, Plaintiff filed with Defendants an Internal Revenue Service form W-5 requesting that she receive the earned income credit to which she was entitled, pursuant to IRC section 32 and section 3507, on each paycheck. Subsequently, she complained to Defendants about not receiving the earned income credit payments on her paycheck. In May 1994 she reported Defendants' conduct to the Internal Revenue Service and informed Defendants' that she had done so. Plaintiff had an

important employment-related right to these payments *for she was only entitled to them if she was an employee. Plaintiff had* a public duty to report *to the Internal Revenue Service* Defendants' *wilful* failure to comply with the earned income credit program.

"5.

"Defendants terminated Plaintiff. A substantial factor in Defendant Software's termination of Plaintiff was that she had opposed Defendant Software's non-payment of the earned income credit payment and/or had complained to the Internal Revenue Service about Defendant Software's nonpayment and noncompliance with the earned income credit program." (Emphasis supplied.)

With the exception of the italicized text, plaintiff repled verbatim in her amended complaint those portions of the original complaint stricken by the trial court.[4] Software moved for summary judgment against the amended complaint. Software's motion stated:

"1.   With respect to the first claim for relief [wrongful discharge], both defendants move for summary judgment. Plaintiff alleges 'wrongful discharge' because she was terminated allegedly for opposing the nonpayment of earned income tax credit. This court has already ruled in this case that such allegations do not support a claim for wrongful discharge and ordered such allegations stricken from plaintiff's original complaint. Plaintiff filed an amended complaint but has repled the same allegations that this Court had already struck. Since, as the Court already ruled, these allegations do not support a claim for wrongful discharge, summary judgment should be granted for defendants."

Software's memorandum in support of its motion said:

"In her original complaint, plaintiff asserted the same claims and made the same allegations as she makes in her amended complaint.

"On June 2, 1995, defendants moved to strike from plaintiff's first claim for relief all references to the earned

---

[4] Plaintiff did not replead the allegations about resistance to racial harassment in her amended complaint and makes no argument about them on appeal.

income credit on the grounds that her opposition to the nonpayment of such credit or her complaint to the Internal Revenue Service *even if true could not support a claim for wrongful termination.* Defendant's motion was fully briefed and argued before Judge Lund. By Order entered on October 9, 1995, Judge Lund granted defendant's motion in full.

"Plaintiff has now replead the same allegations that Judge Lund struck. Since these are the only allegations made in support of plaintiff's claim, and since this Court has already ruled in this case that such allegations do not support her claim, judgment should be entered in defendants' favor." (Emphasis in original.)

Plaintiff responded in her memorandum in opposition to summary judgment that "there is a significant difference between the allegations" in the amended complaint and the original complaint. She continued:

"Defendants do not dispute the allegations regarding the wrongful discharge claim [in the amended complaint]. Instead, Defendants argue that as a matter of law this Court's prior ruling to strike Plaintiff's previous allegations is controlling * * *.

"* * * * *

"A. *This court should reconsider Its Prior Ruling on Plaintiff's Wrongful Discharge Claim Based Upon The Conduct Related To The Earned Income Credit.*

"Defendants are correct that this Court has previously stricken that portion of Plaintiff's wrongful discharge claim based upon opposition to the nonpayment of the EIC and her complaint to the Internal Revenue Service about Defendants' noncompliance with that portion of the Internal Revenue Code related to the earned income credit program. Plaintiff intends to appeal that decision and asks this Court to take this opportunity to reconsider its previous ruling for the same reasons argued in the briefing on that motion to strike. A copy of Plaintiff's Memorandum in Opposition to Defendant's Motion to strike is attached for the Court's convenience and is hereby incorporated herein. See attachment A.

"* * * * *

"On reconsideration, this court should rule that Plaintiff has pleaded a valid claim of wrongful discharge." (Emphasis in original.)

At the hearing on Software's motion for summary judgment, Software argued:

"[Defendant's counsel]: We have been before you before on the first part of our motion involving the earned income credit. Your Honor has already decided this issue. The plaintiffs replead [*sic*] and have the same allegations, and there have been no cases or—no new cases cited by plaintiffs and no new arguments made.

"I will be happy to go into that issue again, but I believe it's already the law of the case. If you want to reconsider it, I'd be happy to go through the arguments again, but since no new arguments were raised and no new cases cited, I think that issue is done with.

"The Court: Right."

Plaintiff's counsel concluded:

"[Counsel]: Your Honor, I agree with defendant on the [wrongful discharge] claim. That has been briefed, *et cetera*, and there are new arguments.[5] That was simply to preserve the argument on appeal, intentionally structured to maintain the same arguments. It was raised due to the defendants' also raising the issue of the individual not being liable under a wrongful discharge claim, and since they brought up the issue, I felt compelled to preserve the record on the other issue as well."

The trial court granted Software's motion for summary judgment and, in considering Software's motion for attorney fees, acknowledged the need for a final judgment so that "you fellows can get on to the Court of Appeals."

Defendants point out on appeal that plaintiff told the trial court that she had repled the amended claim only for purposes of appeal and that the gravamen of her contentions lie in the arguments made to the court regarding the ORCP 21 ruling. They conclude by noting that plaintiff does not

---

[5] We are unable to discern whether counsel misspoke, whether there is a transcription error, or whether counsel intended to assert that there were new arguments.

assign error to that ruling. We read plaintiff's counsel's comments at the hearing on the motion for summary judgment to constitute an acquiescence in defendants' assertion that the ORCP 21 E ruling was "the law of the case,"[6] even though her memorandum in opposition to the motion could be considered a request for reconsideration of that ruling. At the hearing, plaintiff conceded that the amended complaint was "simply to preserve the argument on appeal, intentionally structured to maintain the same arguments." In substance, she told the trial court that it need not reconsider the earlier ruling. On appeal, her assignment of error is to the ruling on the motion for summary judgment. That motion is framed by the amended complaint, which contains some allegations that differ from the original complaint.

Plaintiff cannot have it both ways.[7] In the light of her assignment of error, it was incumbent on her either to seek a ruling from the trial court on the legal sufficiency of the amended complaint and then assign error to that ruling or to assign error to the court's ORCP 21 E order regarding the original complaint. Because she did neither, the trial court did not have the opportunity at the hearing on the motion for summary judgment to rule on the claim of error that plaintiff makes here. Plaintiff has failed to preserve the error that she assigns in this court. For that reason, we affirm the trial court's entry of summary judgment on the claim for wrongful discharge.

Affirmed.

---

[6] A correct understanding of the "law of the case" doctrine is expressed in *Huszar v. Certified Realty Co.*, 272 Or 517, 538 P2d 57 (1975). We do not endorse defendants' use of the phrase in the context of this case.

[7] In her arguments to this court, plaintiff does not appear to recognize that for all legal intents and purposes, the trial court was required to consider the original complaint at the time of the summary judgment hearing as a legal nullity that had previously been stricken. The amended complaint was the pleading properly before the court for purposes of the summary judgment motion.