Argued and submitted May 8, 2001, reversed in part; otherwise affirmed
March 20, 2002

Bruce G. PORTER,
*Appellant,*

*v.*

OBA, INC.,
an Oregon corporation,
dba Oba Restaurant,
dba Oba Restaurante y Refresqueria de Lujo;
and Steven McLain,
*Respondents.*

9902-01426; A109420

42 P3d 931

Kevin Keaney argued the cause and filed the briefs for appellant.

Scott Shorr argued the cause for respondents. With him on the brief were Robert A. Shlachter and Stoll Stoll Berne Lokting & Shlachter P.C.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

DEITS, C. J.

Edmonds, P. J., concurring in part, dissenting in part.

## DEITS, C. J.

Defendants, Oba, Inc. (Oba) and Steven McLain, moved for summary judgment on plaintiff's claims for breach of contract and intentional interference with economic relations. The trial court granted their motion, and plaintiff appeals from the resulting judgment. Viewing the facts and all reasonable inferences that may be drawn from them in favor of plaintiff, the nonmoving party, summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C.[1] Based on that standard of review, we affirm in part and reverse in part.

Plaintiff and McLain, an officer, board member and majority shareholder of Oba, completed the ground work for Oba Restaurant, which opened in November 1997. Before the restaurant opened, the parties negotiated for plaintiff to serve as general manager. On June 15, 1997, plaintiff sent a letter to McLain that stated, in part:

> "This letter serves as a written commitment to you as regards my employment with, and partnership in Oba[,] Inc. * * *

> "* * * I commit to serve in the capacity of General Manager of Oba, for an unspecified period of time—as long as I am needed—starting June 23, 1997. I will serve in that capacity until such time as I am able to benefit the company by moving to another location, or a new capacity. I commit to being open to the knowledge you provide, making use of the tools that you give me, and striving for excellence in all aspects of my job. I will set an example through leadership, and at all times represent the company in a manner that reflects the culture you have successfully created. I commit to the values we share. I commit to the growth of our company.

> "For these commitments, I will receive my annual salary, a bonus package as yet to be determined, Health Insurance coverage to be determined, and a 10% share of the

---

[1] ORCP 47 C was amended in 1999. Or Laws 1999, ch 815. This case was pending in the trial court when those amendments became effective. The amendments to the rule do not affect our analysis in this case.

business. My percentage ownership will not become active until June 22, 1998, one full year of employment. My ownership offer may be rescinded prior to that date, at the Board['ls sole discretion. * * *

"This letter in no way seeks to bind either party in any way, it just seems right to put this in writing for you, both to insure your confidence in my commitments, and to insure that my expectations are well founded and clear."

McLain responded with a letter that was dated June 30, 1997. That letter stated, in part: "An option for ownership (10% of stock) after the first 18 months of employment at Oba[,] Inc. (stock options to be determined)."[2] Plaintiff began work as an employee of Oba in the summer of 1997. McLain terminated plaintiff's employment on November 12, 1998.

In plaintiff's claim for breach of contract, he alleges that "[d]efendant Oba breached the contract by terminating plaintiff's employment or by refusing to grant plaintiff his ownership interest." In his claim for intentional interference with economic relations, he alleges that "[d]efendant McLain terminated plaintiff's employment to deprive plaintiff of his ownership interest in defendant Oba" and "acted, not to benefit defendant Oba, but solely for his own benefit or to injure plaintiff." The trial court granted defendants' summary judgment motion on the breach of contract claim

"on the ground that the contract is not one for employment but rather one setting out certain agreed terms during an at-will employment relationship. The contract is unambiguous as to whether it constituted an employment agreement which varied from the at-will employment relationship; therefore[,] the court has not considered parol evidence on this issue. The other terms of the contract do not survive the termination of employment and therefore are not enforceable."

The trial court also granted defendants' motion on the intentional interference with economic relations claim, stating that "there is no enforceable contractual term which has been breached and thus no illegal interference has occurred and

---

[2] McLain signed the letter after plaintiff's termination.

* * * defendant McLain was acting within the scope of his employment as an officer and director of the corporation."

In plaintiff's first assignment of error, he argues that the trial court erred by failing to consider extrinsic evidence when determining whether the contract was ambiguous. According to plaintiff, consideration of that evidence is required by case law and ORS 42.220, which provides that, "[i]n construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting." Consequently, plaintiff argues that the trial court erred by determining that the contract was unambiguous and that no breach of that contract had occurred. Defendants counter that the trial court properly granted summary judgment on plaintiff's breach of contract claim because, "[e]ven if the court had looked at evidence outside that memorandum, plaintiff presented no evidence of an employment contract for eighteen months or any other period."

In *OTECC v. Co-Gen*, 168 Or App 466, 474-75, 7 P3d 594 (2000), *rev den* 332 Or 137 (2001), we described the general principles of contract interpretation:

> "In the absence of an ambiguity, the trial court in the first instance, and this court on appeal, determines the meaning of a contract as a matter of law. *See Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995). A contract provision is legally ambiguous if it has no definite significance or if it is capable of more than one reasonable and sensible construction in the context of the agreement as a whole. *See Heinzel v. Backstrom*, 310 Or 89, 96, 794 P2d 775 (1990); *Quality Contractors, Inc. v. Jacobson*, 139 Or App 366, 370, 911 P2d 1268, *rev den* 323 Or 691 (1996). In deciding whether an ambiguity exists, the court is not limited to mere text and context but may consider parol and other evidence. *Abercrombie v. Hayden Corp.*, 320 Or 279, 292, 883 P2d 845 (1994). Likewise, if the contract is ambiguous, the trier of fact may consider other evidence of the parties' intentions and construe the language of the agreement accordingly. *Anderson v. Divito*, 138 Or App 272, 277-78, 908 P2d 315 (1995). * * * Our review otherwise is for legal correctness, which means that we determine, as though in the first instance, how the contract should be construed.

*Stevens v. Foren*, 154 Or App 52, 57, 959 P2d 1008, *rev den* 327 Or 554 (1998)."

We begin by examining the text of the disputed provision in the context of the entire agreement. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997); *OTECC*, 168 Or App at 477. The June 30 contract provision, "[a]n option for ownership (10% of stock) after the first 18 months of employment at Oba[,] Inc. (stock options to be determined)," is unambiguous. It provides for an option for stock ownership after the first 18 months of employment. Furthermore, there is nothing in the text of the provision or in the agreement as a whole that indicates a commitment to employ plaintiff for a definite term of 18 months. Thus, we agree with the trial court that the provision is unambiguous based on the text in the context of the entire agreement.

Plaintiff argues, however, that the trial court cannot rely solely on the text and context and should have considered evidence of the circumstances under which the contract was made. Specifically, plaintiff argues that the contract reflects a series of negotiations and that,

"[i]n exchange for later vesting (18 months or December 1998), McLain gave up the right to terminate employment for the first 18 months or to revoke the ownership interest. [Plaintiff] gained a definite vesting date, but had to settle for vesting six months later than was contemplated in the earlier agreement."

We will assume, without deciding, that the trial court was required to consider the circumstances under which the contract was made and that evidence of such circumstances includes evidence of the parties' negotiations. However, while there is evidence in this record about the parties' negotiations concerning plaintiff's ownership interest, there is no evidence in the record concerning negotiations for a definite term of employment. Thus, even if the trial court had considered the evidence in the record of the circumstances under which the contract was made, there is no evidence from which to conclude that the contract is ambiguous. Consequently, the trial court did not err in granting defendants' summary judgment motion on plaintiff's breach of contract claim.

In plaintiff's second assignment of error, he argues that the trial court erred in granting defendants' summary judgment motion concerning plaintiff's claim for intentional interference with economic relations. As the Supreme Court explained in *McGanty v. Staudenraus*, 321 Or 532, 535, 901 P2d 841 (1995),

> "[t]o state a claim for intentional interference with economic relations, a plaintiff must allege each of the following elements: (1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages."

The parties' arguments before the trial court and on appeal concern the first and third elements described in *McGanty*. As stated above, the trial court granted defendants' motion on the grounds that "there is no enforceable contractual term which has been breached and thus no illegal interference has occurred and * * * defendant McLain was acting within the scope of his employment as an officer and director of the corporation." Specifically, on appeal, plaintiff asserts that an economic or business relationship existed between him and Oba and that there was a genuine issue of material fact concerning whether McLain was a third party to the relationship because there was evidence that McLain acted solely for personal reasons when he terminated plaintiff. Defendants make two arguments to counter plaintiff's assertions. First, they contend that, because plaintiff was an at-will employee, there was no business expectancy with which McLain could interfere. Second, and alternatively, defendants assert that, because McLain was acting within the course and scope of his employment, he was not a third party.

We begin by determining whether there was an economic or business relationship for purposes of the tort of intentional interference with economic relations. Defendants assert that there was no such relationship because plaintiff's employment was at will. However, "[t]he parties to an at-will employment relationship have no less of an interest in the

integrity and security of their contract than do any other contracting parties" and, "until such a contract is terminated[,] '[the] contract is valid and subsisting, and the defendant may not [im]properly interfere with it.' " *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 620-21, 733 P2d 430 (quoting *Restatement (Second) of Torts* § 766, cmt g, 10-11 (1979)).[3] Therefore, we reject defendants' argument.

We now turn to the issue of whether McLain was a third party. This court and the Supreme Court have addressed the third-party issue in numerous cases. In *McGanty*, the Supreme Court reasoned:

> "[W]hen an employee is acting in the scope of the employee's employment, the employee is acting as the employer, and not as an independent entity. Accordingly, when an employee is acting within the scope of the employee's employment, and the employer, as a result, breaches a contract with another party, that employee is not a third party for the tort of intentional interference with economic relations." 321 Or at 538.

The court held that the plaintiff in that case had not stated a claim for intentional interference with economic relations because she had alleged that the defendant Staudenraus, the president and owner of the defendant collection agency and the plaintiff's immediate supervisor, acted within the course and scope of his employment at all times; thus, Staudenraus was not a third party and could not be liable for intentional interference with economic relations between the plaintiff and the collection agency.

■ In *Boers v. Payline Systems, Inc.*, 141 Or App 238, 242, 918 P2d 432 (1996), the defendant "Pease assert[ed] that, because he acted as president of [the defendant] Payline rather than as a third party who was a stranger to the contract when he fired plaintiff, he c[ould not] have tortiously interfered with Payline's contractual relationship with plaintiff." We reasoned:

---

[3] The bracketed material in the quotation from the *Restatement (Second) of Torts* comports with the language of the *Restatement*.

"A corporate agent who induces a corporation to breach a contract with another party cannot be liable for intentional interference with that contract if the agent acted in the scope of the agent's employment. In that situation, the agent *is* the corporation. While a party to a contract may breach it, it is logically impossible for a party to interfere tortiously with its own contract. However, if the agent's sole purpose is one that is not for the benefit of the corporation, the agent is not acting within the scope of employment and may be liable." *Boers*, 141 Or App at 242-43 (emphasis in original).

In *Sims v. Software Solutions Unlimited, Inc.*, 148 Or App 358, 939 P2d 654, *rev den* 326 Or 57 (1997), the plaintiff asserted a claim for intentional interference with economic relations against Rodenbeck, the president of Software Solutions. The defendants moved for summary judgment and argued "that Rodenbeck, as an employee of Software, could not interfere with plaintiff's economic relations with Software as a matter of law, because he was acting within the scope of his employment." *Id.* at 360. The trial court granted the defendants' motion. On appeal, we reasoned:

"In the context of the tort of intentional interference with an economic relationship, * * * the employer's interests are not intended to be benefitted by the interference. Thus, so long as the actor's actions are within the scope of his authority and are undertaken at least in part to further the best interests of the employer, it is immaterial that the actor has additional motives. In contrast, when the actor acts against the best interests of the employer or *solely* for his own benefit, he could be held liable in tort for the harm done to the other contracting party." *Id.* at 364-65 (emphasis in original).

Ultimately, we held that the trial court properly granted summary judgment:

"[T]he evidence that Rodenbeck had a 'personal vendetta' against plaintiff from which the act of terminating plaintiff's employment flowed is of no legal consequence. His actions according to plaintiff's own evidence, were done, at least in part, to benefit Software by terminating the employment of an at-will employee who was deemed a 'troublemaker.' There is no evidence that Rodenbeck acted *solely* for his own interests. Therefore, Rodenbeck cannot be a

'third party' to the employment relationship between plaintiff and Software as a matter of law." *Id.* at 365 (emphasis in original; footnote omitted).

Here, plaintiff asserts:

"On summary judgment, the evidence must be construed in plaintiff's favor. The evidence shows that, under plaintiff's stewardship, Oba was extremely successful, financially and otherwise. It also shows that, in June 1998, McLain rated plaintiff's work performance satisfactory, gave plaintiff [a] * * * raise, and reiterated that plaintiff would receive his ownership interest in six (6) months. Five (5) months[ ] later, however, and just six (6) weeks short of the date upon which plaintiff was to have obtained his ownership interest, McLain fired plaintiff."

Even though there is evidence to support defendants' theory that McLain terminated plaintiff to benefit Oba, a trier of fact reasonably could infer from the evidence to which plaintiff points that McLain fired plaintiff solely for a personal reason—to deprive plaintiff of his ownership interest in Oba. Thus, this case is unlike *Sims* because the trier of fact could infer from plaintiff's evidence that McLain acted solely for his own interests and not to benefit Oba.

The dissent, however, states that "Gomez's and McLain's statements about their personal beliefs regarding McLain's authority to discharge plaintiff and plaintiff's work performance are not controverted in the record," 180 Or App at 225 (Edmonds, P. J., concurring in part, dissenting in part), and that "[t]he uncontroverted evidence in the summary judgment record in this case is that McLain acted within the scope of his authority as the managing shareholder and at least in part for the interests of Oba when he fired plaintiff," *id.* at 226 n 2 (Edmonds, P. J., concurring in part, dissenting in part). Specifically, the dissent relies on deposition testimony and on the affidavit of Gomez, Oba's other shareholder at the time of plaintiff's termination. That evidence is not the only evidence in the record. As we have already stated, plaintiff points to evidence in the record— including evidence that he produced such as his affidavit and exhibits—from which a trier of fact reasonably could infer that McLain fired plaintiff solely for a personal reason—to deprive plaintiff of his ownership interest in Oba. *See Kaelon*

*v. USF Reddaway, Inc.*, 180 Or App 89, 102, 42 P3d 344 (2002) (reasoning that, in *Sims*, "[w]e did not hold that a plaintiff's evidence of personal motive for interference with an employment contract becomes legally inconsequential whenever the record contains other evidence that the defendant's actions were done at least in part to serve the employer"). Therefore, the trial court erred in granting summary judgment on plaintiff's intentional interference with economic relations claim.

The dissent disagrees. It asserts that, to the extent that plaintiff's claim for intentional interference with economic relations is based on an at-will employment contract, the trial court properly granted defendants' summary judgment motion because McLain's motive in terminating plaintiff's employment was not improper as a matter of law. Specifically, we understand the following to be the dissent's position: (1) In order to demonstrate that McLain was a third party, plaintiff asserted that McLain's sole motivation, intent or reason for terminating plaintiff was personal—to protect the value of McLain's stock in Oba. (2) Even if a genuine issue of material fact exists concerning whether McLain was a third party for the reason that plaintiff identified, defendants are entitled to summary judgment if that reason is not improper as required by the improper means or motive element of the tort. (3) As a matter of law, greed is not an improper motive.[4]

---

[4] In support of that proposition, the dissent makes three arguments. First, the dissent argues that McLain's action was based on a self-serving motivation and that, as in *Uptown Heights Associates v. Seafirst Corp.*, 320 Or 638, 891 P2d 639 (1995), a self-serving motive is not tortious. In *Uptown Heights Associates*, however, the third party had a contract with the plaintiff. That contract was different from the contracts or relationships with which the third party allegedly interfered. The contract between the plaintiff and the third party established their reasonable expectations, and conduct in conformity with that contract was legitimate regardless of the motivation for the conduct. Here, the contract with which McLain is alleged to have interfered is between plaintiff and Oba. Unlike in *Uptown Heights*, there is no alleged contract between McLain and plaintiff. Thus, if McLain is a third party, he did not do what he was permitted to do under a contract between himself and plaintiff, and *Uptown Heights Associates* is inapposite.

Second, the dissent argues that, "[w]hen McLain, as Oba's managing shareholder, fired plaintiff, he did for Oba precisely what Oba's principals desired and what he was entitled to do under Oba's employment contract with plaintiff." 180 Or App at 232-33 (Edmonds, P. J., concurring in part, dissenting in part). We disagree, however, that an individual who acts solely for personal reasons and not to benefit the employer, in other words a third party, can take advantage of the at-will

The primary problem with the dissent's position is that this is not an issue that defendants raise on appeal nor one that they raised in the trial court. As discussed above, their position here is that, because plaintiff was an at-will employee, plaintiff did not have an economic or business relationship with which McLain could interfere and that McLain was not a third party to the contract because he was acting within the course and scope of his employment. Based on our view of this case, the gravamen of the dissent's position is that, even though the trial court did not address the issue of whether greed satisfies the improper means or motive element of the tort of intentional interference with economic relations, we should affirm on the basis that the trial court was right for the wrong reason. For reasons that we will discuss, this is not an appropriate case in which to do so.

■    In *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), the Supreme Court discussed the right for the wrong reason doctrine:

> "As developed by this court's decisions, the 'right for the wrong reason' principle permits a reviewing court—as a matter of discretion—to affirm the ruling of a lower court on an alternative basis when certain conditions are met. The first condition is that, if the question presented is not purely one of law, then the evidentiary record must be sufficient to support the proffered alternative basis for affirmance. That requires: (1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the

---

employment doctrine to avoid liability under the tort. Thus, if McLain is a third party, he cannot take advantage of the at-will employment doctrine to avoid liability.

Finally, the dissent argues that, "because the *conduct* of firing plaintiff did not violate a statute, an administrative rule, a recognized rule of common law, or a recognized business or trade standard, and the *motive* for firing plaintiff *also* did not violate any standard derived from the above sources, the interference was not wrongful beyond the fact of the interference itself." *Id.* at 236 (Edmonds, P. J., concurring in part, dissenting in part) (emphasis in original). Although, as we will discuss, we do not decide in this case whether greed is an improper motive for purposes of the improper means or motive element of the tort, we disagree with the dissent that that legal issue has been clearly resolved. *See Boers*, 141 Or App at 244-45 ("If a jury believes that a defendant acted to injure the plaintiff, it can find that the defendant acted with an improper purpose. A corporate officer acts with an improper purpose in firing an employee when the officer's sole purposes were 'not to benefit the corporation's interest, but were instead self-serving or vindictive' and when the officer's purposes 'are not intended to serve the principal.'") (citations omitted).

trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. In other words, even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance. The second condition is that the decision of the lower court must be correct for a reason other than that upon which the lower court relied. Third, and finally, the reasons for the lower court's decision must be either (a) erroneous or (b) in the reviewing court's estimation, unnecessary in light of the alternative basis for affirmance." (Emphasis in original.)

Unlike the dissent, we do not decide whether greed satisfies the improper means or motive element of the tort because, even if it does not, this is not an appropriate case for us to exercise our discretion and affirm the trial court on an alternative basis. In plaintiff's claim for intentional interference with economic relations, he alleges, in part, that McLain: "intentionally interfered with plaintiff's contract or economic relationship with * * * Oba by terminating plaintiff's employment"; "terminated plaintiff's employment to deprive plaintiff of his ownership interest in * * * Oba"; and "acted, not to benefit * * * Oba, but solely for his own benefit or to injure plaintiff."

In defendants' memorandum in support of their summary judgment motion, the only issue raised concerning the intentional interference with economic relations claim was that the "claim fails as a matter of law because McLain's conduct is not considered the conduct of a *third party*." (Emphasis in original.) Defendants' theory was that McLain was not a third party because he acted within the course and scope of his employment. In plaintiff's memorandum in opposition to defendants' summary judgment motion, he responded to defendants' third-party argument by asserting that McLain acted as a third party outside of the scope of employment and "for a reason entirely personal: Greed." In

defendants' reply, they summarized their argument concerning the intentional interference with economic relations claim:

> "Likewise, the interference claim against McLain fails as a matter of law. An interference claim requires action by a **third party or outsider** to a contract who improperly disrupts or causes its termination. Summary judgment is appropriate because there is no third party or outsider involved." (Boldface in original.)

Similarly, on appeal, the parties focus on the issues of whether plaintiff had an economic or business relationship with which McLain could interfere and whether McLain terminated plaintiff for solely personal reasons or to benefit Oba. The parties do not raise on appeal nor do they expressly discuss the improper means or purpose element of the tort.[5]

---

[5] The dissent argues that the record demonstrates that the improper means or motive element of the tort is at issue in this case. In support of that argument, the dissent points to defendants' summary judgment motion, which provides, in part, that defendants moved for summary judgment

> "on the grounds that McLain was not a third party to any alleged agreement for employment or stock ownership which [plaintiff] claims was breached, and further McLain did not act solely for his personal benefit, and did not act without any intent to benefit Oba, in terminating [plaintiff]."

That entire paragraph from defendants' summary judgment motion deals with the issue of whether McLain acted to benefit Oba—that is, whether he was a third party. In addition, defendants' motion should be viewed in the context of the arguments that defendants made in their memorandum. Defendants argued, in part:

> "[Plaintiff] cannot prove the third-party element of the tort.

> "First, [plaintiff] testified that, under their alleged employment contract, McLain personally promised to give [plaintiff] 10% of his own 65% shares of Oba stock. That means the alleged agreement for stock ownership, which [plaintiff] claims was breached, was between [*plaintiff*] and *McLain*, since Oba would have no interest in the private transfer of McLain's personal shares. If the stock agreement was between [plaintiff] and McLain, as [plaintiff] admits, then, as a matter of law, McLain cannot be a third party to his individual contractual obligation, and he cannot be liable for intentional interference.

> "Second, when an employee is acting within the scope of his employment, the employee is acting *as* the employer and is not a third party for the tort of intentional interference with economic relations. [Plaintiff] alleges, in his first claim, that he had an employment contract with Oba and that *Oba* breached that contract by terminating him. * * *

> "* * * * *

> "[Plaintiff] will argue that McLain terminated [plaintiff] in order to avoid having to give [plaintiff] a percentage of Oba stock, which would have reduced McLain's ownership interest in the restaurant. Even if this were true, such alleged personal motive is of no legal consequence in light of evidence that

■ Here, in order to respond to defendants' contention that McLain was not a third party, plaintiff developed a record to support his argument that McLain acted for a solely personal reason, greed, and did not act to benefit Oba. Had defendants asserted that summary judgment was appropriate on the grounds that McLain was not a third party *and* that his motive was proper, plaintiff might have presented argument and developed a different factual record concerning the propriety of McLain's motive, or plaintiff might have asserted a reason other than greed to demonstrate that McLain was a third party. *See Zerba v. Ideal Mutual Ins. Co.*, 96 Or App 607, 611, 773 P2d 1333 (1989) ("Defendants raise several additional arguments on appeal that were not presented to the trial court. Plaintiff has had no opportunity to

---

McLain's actions were done, at least in part, to benefit Oba by terminating the employment of a general manager who failed to meet stated company standards. Any personal motive that [plaintiff] may introduce is, at best, evidence of a mixed motive. Based on the evidence stated above, no jury could reasonably infer that any alleged improper motive was McLain's *sole* motive for terminating [plaintiff], and summary judgment is proper.

"\* \* \* \* \*

"\* \* \* [T]he record establishes irrefutably that McLain acted, at least in part, to serve Oba's interests and, therefore, acted within the scope of his employment in terminating [plaintiff]. Because, under Oregon law, an employee acting within the scope of his employment cannot be liable for interference with a contract involving the employer, McLain cannot be liable for intentional interference with economic relations, and [plaintiff's] second claim for relief should be dismissed. Likewise, as a matter of law, McLain cannot interfere with any alleged promise to deliver his own stock to [plaintiff]." (Citations and footnotes omitted; emphasis in original.)

Thus, the language in defendants' summary judgment motion that "McLain was not a third party to any alleged agreement for employment or stock ownership which [plaintiff] claims was breached" reflects defendants' argument that McLain could not interfere with a contract to which he was a party. Additionally, the language in defendants' motion that "McLain did not act solely for his personal benefit, and did not act without any intent to benefit Oba, in terminating [plaintiff]" reflects defendants' argument that McLain is not a third party because he acted to benefit Oba. In sum, defendants' motion raised only the issue of whether McLain was a third party.

Additionally, the dissent points to statements in plaintiff's and defendants' appellate briefs that refer to McLain's intent or motivation in terminating plaintiff and argues that those references indicate that both the third-party and improper means and motive elements of the tort are at issue. Those references, however, refer to the third-party element of the tort or, in other words, to whether McLain's motive or intent in terminating plaintiff was solely personal as opposed to whether any personal motive was improper for purposes of the improper means and motive element of the tort.

present evidence pertaining to those issues, and we decline to address them now.").[6]

The dissent asserts that, "[u]nder defendants' arguments, the tort elements of third-party status and tortious means/motive are interrelated, and both elements are in issue because their fulfilment depends on the same evidentiary inference under plaintiff's argument," 180 Or App at 226 (Edmonds, P. J., concurring in part, dissenting in part), and that, "[g]iven that the parties have always viewed the issues on summary judgment as being interrelated, it is only fair to them, and consistent with principles of judicial economy, that we consider the entire issue of whether McLain is entitled to summary judgment based on the elements of the tort[,]" *id.* at 229 (Edmonds, P. J., concurring in part, dissenting in part). As the dissent notes, we recognized in *Kaelon* that the same evidence can be used to establish both the third-party and improper means or motive elements of the tort. However, significantly, in *Kaelon*, we also said that third-party status and improper means or motive "are discrete elements." 180 Or App at 98 n 1. The fact that there is evidence that may be used to establish both elements of the tort does not necessarily mean that, when a party raises one element of the tort, the party automatically raises the other. In this case, the parties raised only the third-party element.

In sum, defendants did not raise the issue of whether greed can satisfy the improper motive element of the tort of intentional interference with economic relations, and this is not an appropriate case to affirm the trial court on the ground that it was right for the wrong reason because, had defendants raised that issue below, the factual record might have

---

[6] The dissent states that "[t]here has been no suggestion in this case, either in the record below, in the briefs, or in oral argument that plaintiff has any other evidence to submit to a jury." 180 Or App at 229 (Edmonds, P. J., concurring in part, dissenting in part). Contrary to the dissent's position, because plaintiff had no reason to anticipate that this court would examine *sua sponte* the applicability of the right for the wrong reason doctrine to this case, plaintiff had no reason to suggest that the record would have been developed differently had the improper means or motive element been raised to the trial court. As the Supreme Court stated in *Outdoor Media Dimensions Inc.*, "if the losing party *might* have created a *different* record below had the prevailing party raised that issue, and that record *could* affect the disposition of the issue, then we will not consider the alternative basis for affirmance." 331 Or at 660 (first and third emphasis added; second emphasis in original).

been developed differently. Therefore, we conclude that the trial court improperly granted defendants' summary judgment motion on plaintiff's claim for intentional interference with economic relations.

Judgment on plaintiff's fourth claim for intentional interference with economic relations reversed; otherwise affirmed.

**EDMONDS, P. J.,** concurring in part, dissenting in part.

I agree with the majority that, even when parol evidence of the circumstances of the contract is considered, there is no evidence that plaintiff's employment relationship with Oba, Inc. (Oba) was other than an at-will relationship. However, for the reasons that follow, I disagree with the majority's ruling that plaintiff's claim for intentional interference with economic relations against McLain is legally cognizable. I would hold that, without accompanying evidence of tortious conduct, McLain's alleged motive is not actionable, and I would affirm the trial court's summary judgment ruling.

The majority perceives that the issue before the trial court was limited to whether McLain was a third party to the employment contract between Oba and plaintiff and that the issue of "improper motive" was not raised below. The majority holds that the trial court cannot be affirmed on an alternative basis that was not before the trial court. It says that, "[h]ad defendants asserted that summary judgment was appropriate on the grounds that McLain was not a third party *and* that his motive was proper, plaintiff might have presented argument and developed a different factual record concerning the propriety of McLain's motive, or plaintiff might have asserted a reason other than greed to demonstrate that McLain was a third party." 180 Or App at 221 (emphasis in original). It concludes that, "[u]nlike the dissent, we do not decide whether greed satisfies the improper means or motive element of the tort because, even if it does not, this is not an appropriate case for us to exercise our discretion and affirm the trial court on an alternative basis." 180

Or App at 219. The record and the law as applied to the record do not support the majority's assertion that the only issue before us is McLain's third-party status.

The elements of a claim for intentional interference with economic relations include an intentional interference by a third party, accomplished by improper means or for an improper motive. *McGanty v. Staudenraus*, 321 Or 532, 535, 901 P2d 841 (1995). Proof of an interference by a third party with an economic relationship without accompanying proof of improper means or an improper motive will not suffice to make out the claim. In accordance with the elements of the test, defendants moved for summary judgment in the trial court

> "on the grounds that McLain was not a third party to any alleged agreement for employment or stock ownership which Porter claims was breached, *and further* McLain did not act solely for his personal benefit, and did not act without any intent to benefit OBA in terminating Porter." (Emphasis added.)

In their memorandum in support of their motion for summary judgment, defendants explained,

> "Porter will argue that McLain terminated Porter in order to avoid having to give Porter a percentage of Oba stock, which would have reduced McLain's ownership in the restaurant. Even if this were true, *such alleged personal motive is of no legal consequence* in light of evidence that McLain's actions were done, at least in part, to benefit Oba by terminating the employment of a general manager who failed to meet stated company standards. *Any personal motive that Porter may introduce is, at best, evidence of a mixed motive. Based on the evidence stated above, no reasonable jury could reasonably infer that ·any alleged improper motive was McLain's sole motive* for terminating Porter, and summary judgment is proper." (Emphasis added; footnote omitted.)

Also, in support of their summary judgment motion, defendants offered evidence regarding McLain's motivation in an affidavit by Stephen Gomez. Gomez and McLain were the only shareholders in Oba at the time of plaintiff's termination. Gomez averred that, throughout plaintiff's tenure as

restaurant manager, plaintiff "did not adequately under-
stand the financial aspects of running the restaurant and did
not achieve the company's financial goals." Gomez also stated
that:

> "[p]rior to terminating Bruce Porter, McLain informed me
> of his decision to terminate Porter, and I supported McLain
> in his decision. At all times, McLain was acting within the
> course and scope of his duties as a corporation officer and
> employee of Oba, Inc. and to benefit Oba's interests, and in
> fact Oba's interests were benefitted by the termination of
> Porter."

Gomez's and McLain's statements about their per-
sonal beliefs regarding McLain's authority to discharge
plaintiff and plaintiff's work performance are not contro-
verted in the record. The majority disagrees. 180 Or App at
216-17. But the "controverting" evidence that the majority
refers to is plaintiff's testimony that he performed his duties
adequately and the inference that plaintiff draws from the
fact that McLain's ownership interest in OBA would have
been diluted if plaintiff had been made a shareholder. The
question in this case is whether that evidence suffices to pre-
clude summary judgment by creating issues of fact as to
McLain's third-party status and about whether he had an
improper motive when he fired plaintiff.

In substance, defendants' motion sought summary
judgment on the grounds that two of the elements of the tort
of interference with economic relations (McLain's third-party
status and McLain's "improper" motive) cannot be proved by
plaintiff on this record. As we recognized in *Kaelon v. USF
Reddaway, Inc.*, 180 Or App 89, 98 n 1, 42 P3d 344 (2002), the
same evidence can establish both an improper purpose and
that a defendant was not acting in the scope of employment,
*i.e.*, the third-party element.[1] The evidence offered in the
summary judgment proceeding, to establish *both* elements, is

---

[1] In *Kaelon,* we distinguished the facts in that case from the facts in *Sims v.
Software Solutions Unlimited, Inc.,* 148 Or App 358, 939 P2d 654, *rev den* 326 Or 57
(1997). The issue in both cases was whether the defendants were "third parties" to
the economic relationships allegedly interfered with by the defendants. We pointed
out that, in *Sims* the plaintiff's own evidence demonstrated a mixed motive for pur-
poses of the third-party element. The holdings in *Sims* and *Kaelon* do not turn on
the issue of whether the defendants acted with an improper or tortious motive.

the inference that plaintiff draws that McLain acted for his self-interest, so that his stock ownership would not be diluted.

Plaintiff alleged that "Defendant McLain terminated plaintiff's employment to deprive plaintiff of his ownership interest in defendant Oba" and "Defendant McLain acted, not to benefit OBA, but solely for his own benefit or to injure plaintiff." Defendants, in their written motion and accompanying memorandum, first pointed out that, even viewed in the light most favorable to plaintiff, the inference that he acted to protect his own stock interests would prove only that his motives were "mixed," and he therefore could not be a third party to the employment contract. Second, defendants anticipated in their motion and accompanying memorandum that plaintiff would argue that a jury could reasonably infer that McLain terminated plaintiff's employment to avoid a reduction in his stock ownership (an allegedly improper motive), thereby implicitly, if not expressly, creating an issue of material fact as to the improper motive element. To forestall that argument, defendants argued that, even if McLain had been motivated to protect his own stock ownership, such an allegedly improper motive has "no legal consequence," in light of the uncontroverted evidence that McLain was acting within his authority as general manager consistently with the wishes of Gomez, the other shareholder, and that he was motivated, at least in part, to benefit Oba.[9] In other words, there is no legal consequence, insofar as the tort of intentional interference with an economic relationship is concerned, unless plaintiff's inference suffices to establish *both* the third-party and tortious motive elements. Under defendants' arguments, the tort elements of third-party status and tortious means/motive are interrelated, and both elements are in issue because their fulfilment depends on the same evidentiary inference under plaintiff's argument.

---

[9] In contrast to *Uptown Heights Associates* and this case, the employer in *Nees* acted with a motive that violated an established standard of public policy (firing employees for serving on jury duty), and its motive therefore was actionable even though the employee's employment was at will and its "means" of discharging the plaintiff was therefore lawful. *Nees*, 272 Or at 219.

In response, plaintiff was left to argue to the trial court that a jury could infer that McLain's sole motive was self-interest and that that possible inference from the evidence was sufficient to preclude summary judgment. But under defendants' interpretation of the law, McLain's desire to protect his own stock interest is not an improper motive and therefore has no legal consequence of liability. Thus, plaintiff's response to defendants' motion, evidence, and arguments also puts both elements squarely into issue as a matter of law: (1) whether plaintiff's evidence that McLain acted solely for his benefit established the third-party element and (2) whether plaintiff's inference that McLain acted to protect his own stock interests is an improper motive. Because defendants' summary judgment motion is based on the claimed inability of plaintiff to prove both elements and plaintiff has the burden of persuasion as to those elements, plaintiff must offer evidence in the summary judgment proceeding that, if believed, will satisfy those elements and will give rise to a cognizable claim under the law. ORCP 47 C. In the absence of proof of an improper motive, McLain is entitled to summary judgment as a matter of law, regardless of whether plaintiff can establish that McLain was a third party to the contract.[3]

The majority also says that "[t]he parties do not raise on appeal nor do they expressly discuss the improper means or purpose element of the tort." 180 Or App at 220. On

---

[3] The majority says, "The fact that there is evidence that may be used to establish both elements of the tort does not necessarily mean that, when a party raises one element of the tort, the party automatically raises the other. In this case, the parties raised only the third-party element." 180 Or App at 222. The majority misunderstands my position. There is no "automatic" principle at work in the analysis. When, as in this case, a party (here, defendants) moves for summary judgment and offers evidence that it claims is uncontroverted and that evidence operates to defeat two elements of the tort, the party opposing summary judgment must offer controverting evidence that creates a genuine issue of material fact on both elements. In order to prevail in this case on McLain's summary judgment motion, plaintiff must offer evidence that creates triable issues of fact on both the elements of third-party status and improper motive. While plaintiff's inference that McLain acted for his self-interest raises an issue of fact on the third-party status element, it does not, under the circumstances of this case (where McLain's termination of plaintiff was fully authorized by the only shareholders in the corporation and did not violate any statute, administrative regulation, recognized rule of common law, or business or trade standard), create a genuine issue of fact that he acted with an improper motive.

appeal, plaintiff's opening brief assigns as error the dismissal of his intentional interference with economic relations claim. In support of his assignment of error, he argues in his brief, in part:

"The reason for the discharge is clear—greed. McLain did not want to dilute or share his ownership interest. The trial court erred because it took away the issue of McLain's intent and dismissed the case without the jury having rendered its finding."

In response, defendants argue in their brief, in their summary of argument, that, "[b]ecause McLain undisputably had a legitimate basis for terminating Porter on behalf of Oba and was acting within the scope of his authority, McLain could not be liable as a matter of law for intentional interference with the purported contract between plaintiff and Oba." Later, defendants note in their brief, "[P]laintiff's only argument on appeal is that McLain was motivated by purported 'greed' in terminating plaintiff." Defendants counter, "[A]s discussed above, McLain presented overwhelming and undisputed evidence below (including undisputed third-party affidavits and deposition testimony) that the termination of plaintiff was necessary to address the legitimate business concern that plaintiff was negatively impacting Oba's business and staff morale." In sum, both the issue of whether McLain was a third party to the contract, and whether he acted with an improper motive, were before the trial court *and* are raised on appeal, notwithstanding the majority's attempt to conflate the arguments of the parties into a third-party status issue only.

In addition to the above comments, I take exception to the majority's rationale for policy reasons. The majority cleverly but improperly characterizes my reasoning as a "right for the wrong reason" analysis to avoid deciding an issue of law regarding a necessary element of the tort. I suggest that, when the issue is whether the parties raised a particular argument below, the majority's "scalpel" approach is not warranted. In my experience, the reality of the practice of law is that parties make arguments on issues in the trial court that often are not as focused or as sharp as appellate judges would prefer. Nonetheless, our approach on this court

has generally been to take a broader view than that employed here by the majority. For instance, for purposes of preservation of error under ORAP 5.45, our focus is on the "issue" raised, not the argument or the source of authority relied on in the trial court. *See State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988). There has been no suggestion in this case, either in the record below, in the briefs, or in oral argument that plaintiff has any other evidence to submit to a jury. Plaintiff's claim is based solely on the inference that he draws from the fact that McLain was a shareholder. Moreover, there has been no suggestion by the parties that the issue of whether McLain had an improper motive is not properly before this court. The majority's decision not to decide whether plaintiff has offered sufficient evidence on the improper motive element of an intentional interference with economic relations claim has been made *sua sponte*. Given that the parties have always viewed the issues on summary judgment as being interrelated, it is only fair to them, and consistent with principles of judicial economy, that we consider the entire issue of whether McLain is entitled to summary judgment based on the elements of the tort. As explained below, we should affirm the trial court's grant of summary judgment because plaintiff's evidence that McLain acted for his self-interest does not constitute evidence that he acted with an improper motive, as required by the elements of the tort.

Under the majority's holding on the parol evidence issue, plaintiff's employment agreement was an at-will agreement. Plaintiff had no contractual right to be employed for 18 months. Rather, plaintiff had a mere expectancy of receiving stock in the company, that could ripen into a contract right in the future, based on the contingency that he remain employed. That fact is the beginning point of the analysis because it comments significantly on whether McLain acted with an improper motive when he fired plaintiff.

Because plaintiff's employment contract with Oba was terminable at will, it is important to understand what role that kind of relationship plays in the context of the tort of intentional interference with economic relations. It is correct that generally an employment contract terminable at will is a

contractual relationship that could be, but is not necessarily, subject to protection against tortious interference by a third person.[4] *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 620, 733 P2d 430 (1987). In *Lewis*, the son of the principal owner of the defendant corporation supervised a warehouse where the plaintiff worked. The plaintiff and the son had dated, but when the plaintiff started dating other men the son became jealous and started to harass her at work. Eventually, the plaintiff quit as a result of the harassment. The court upheld a jury verdict for damages against the son based on the theory of intentional interference with a contractual relationship in light of the plaintiff's demonstration that the defendant's conduct did not serve any legitimate purpose. The court held that the son's conduct of physically and verbally intimidating the plaintiff by threatening her and defaming her to other employees constituted the kind of improper motives at which the tort remedy of intentional interference with economic relations is aimed. *Lewis* is an example of when an action for intentional interference with a contractual interest will lie because of the tortious *conduct* of a third party to the employment relationship.

The issues in this case differ from the issues in *Lewis* in significant ways. In contrast to the constructive discharge because of verbal and physical intimidation in *Lewis* (an improper *means* case), plaintiff asserts that his discharge was based on McLain's improper *motive* to deprive him of his ability to exercise his stock option. In response, McLain argues that he fired plaintiff because of his inadequate performance as the general manager of Oba (in other words, that his *motive* was not tortious). Although the evidentiary record on summary judgment is subject to competing inferences as to McLain's motivation in firing plaintiff, the legal question presented by the summary judgment motion is whether

---

[4] In *Nees v. Hocks*, 272 Or 210, 216, 536 P2d 512 (1975), the court held that an employer could be held liable for wrongful discharge for discharging an at-will employee for serving on jury duty. The court said:

"[I]n the absence of a contract or legislation to the contrary, an employer can discharge an employee at any time and for any cause. Conversely, an employee can quit at any time and for any cause. Such termination by the employer or employee is not a breach of contract and ordinarily does not create a tortious cause of action." *See also Sheets v. Knight*, 308 Or 220, 233-34, 779 P2d 100 (1989), *abrogated by McGanty*, 321 Or 532.

plaintiff can make out a legally cognizable claim for intentional interference with economic relations, *in light of the facts most favorable to plaintiff*, when the employment relationship was at will, and when the only "improper motive" claimed is that McLain acted to protect his own stock interest. ORCP 47 C. To do so, plaintiff must establish

> "[n]ot only * * * that defendant intentionally interfered with his business relationship but also that defendant had a duty of non-interference; *i.e.*, that he interfered for an improper purpose rather than for a legitimate one * * *. Therefore, a case is made out which entitles plaintiff to go to the jury *only 'when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.' " Straube v. Larson,* 287 Or 357, 361, 600 P2d 371 (1979) (emphasis added).

In *Uptown Heights Associates v. Seafirst Corp.*, 320 Or 638, 891 P2d 639 (1995), the court focused on the need of a plaintiff to demonstrate that the interference, to be actionable, must be wrongful beyond the fact of the interference itself. In that case, real estate developers sued their lender, a bank, for wrongful interference with an economic relationship with a potential buyer of the plaintiffs' apartment complex. The bank, acting in its self-interest, refused to postpone its foreclosure proceeding against the plaintiffs, causing them to lose their interest in the property. After the foreclosure, the bank entered into a sale agreement for the property with the potential buyer. As in this case, the plaintiffs in *Uptown Heights Associates* alleged only an improper motive.[5] The court rejected the plaintiffs' argument, reasoning that:

---

[5] The majority says that *Uptown Heights Associates* is inapposite. *See* 180 Or App at 217-18 n 4. The majority is correct in only one respect. The bank in *Uptown Heights Associates* was exercising its own contractual right, and McLain has no contractual right to terminate plaintiff except as authorized by Oba. What *Uptown Heights Associates* teaches is that the reasonable expectations of the parties, as defined by their contractual relationship, are the standard against which to measure the wrongfulness of an interference. In this case, there is no allegation and no evidence that McLain acted with improper *means*. The only reasonable expectation plaintiff could have under his contract with Oba was continued employment at will. Plaintiff's discharge from employment was not outside his reasonable expectations as defined by his employment contract. Thus McLain's conduct was not wrongful. Secondly, *Uptown Heights Associates* is instructive because in it, as here, the plaintiffs alleged that the actor's selfish *motives* were tortious. Thus, the import of *Uptown Heights Associates* to this case is that it instructs us to focus the inquiry on the necessity of evidence of an improper motive where there is no evidence of improper means.

"The essence of Uptown's argument is that a party who invokes an express contractual remedy by proper means may still be liable for intentional interference with economic relations if that party simply has a malevolent reason for enforcing its written contract. We disagree. When a party invokes an express contractual remedy in circumstances specified in the written contract—conduct that reflects by definition, the reasonable expectations of the parties—that party cannot be liable for intentional inference with economic relations based solely on that party's reason for invoking the express contractual remedy. That is because, if the defendant has interfered with the plaintiff's economic relations, the defendant has done so for a 'legitimate' purpose—invocation of an express, written contractual remedy—in such circumstances.

"A contrary ruling would contravene public policy and undermine the stability of contractual relations. As this court's decision in *Pacific First Bank* [*v. New Morgan Park Corp.*, 319 Or 342, 876 P2d 761 (1994),] made clear, courts will not read implied terms into a contract if those terms would contradict the express terms of the contract. It would be anomalous to hold that a party to a contract nonetheless must defend a tort claim *when a complaint shows that the party did precisely what the party was entitled to do under the contract.*" *Uptown Heights Associates*, 320 Or at 651-52 (citations and footnote omitted; emphasis added).

In this case, plaintiff's claim for intentional interference with economic relations is based on a pleading that alleges an employment agreement for a term of at least 18 months. The majority determines correctly that there is no evidence of an agreement that plaintiff's employment would continue until he is able to exercise a stock option, and that should be the end of plaintiff's assignment of error. But even if plaintiff's theory is based on an at-will employment agreement, he could be fired for any reason at any time. Plaintiff's only interest that could be interfered with was a personal, noncontractual expectancy that was subject to Oba's contractual right to terminate his employment relationship arbitrarily. It follows that plaintiff did not have a cognizable, economic relationship (an employment for a term) that could be interfered with by a termination before the 18-month period expired. When McLain, as Oba's managing shareholder, fired plaintiff, he did for Oba precisely what Oba's principals

desired and what he was entitled to do under Oba's employment contract with plaintiff. In other words, plaintiff offers no evidence on those facts that McLain's interference with his employment contract was wrongful by some measure beyond the fact of the interference itself.

Instead of focusing on both the issue of the tortious nature of the interference and the third-party issue, the majority's analysis focuses only on whether McLain was a "third party" to the contract between Oba and plaintiff. The "third-party" element in the tort of intentional interference with an economic relationship exists because a party to a contract cannot be liable in tort for interfering with its own contract. However, an agent of a party, usually a supervisor or corporate manager, can become a third party when, instead of acting as an agent, the agent causes the principal to breach the contract. *See, e.g., Welch v. Bancorp Management Services,* 296 Or 208, 214-15, 675 P2d 172 (1983); *Walsh v. Consolidated Freightways,* 278 Or 347, 356-57, 563 P2d 1205 (1977); *Wampler v. Palmerton,* 250 Or 65, 73, 439 P2d 601 (1968).

When the supervisor acts within the scope of authority granted to him by the employer, there is no "third-party" interference. In the eyes of the law, the supervisor *is* the employer. However, the privilege granted to the supervisor by the terms of the employment contract is lost if the supervisor did not intend, at least in part, to benefit the employer, or if he or she was acting outside the scope of his or her authority. *Welch,* 296 Or at 25. The question of the supervisor's motive can be pivotal to whether the supervisor is a third party to the contract. Thus, a claim for intentional interference with an at-will employment contract exists where a supervisor induced the employer to fire the plaintiff in retaliation for the plaintiff's criticism of the defendant's affair with an employee of a customer,[6] where the plaintiff alleged that the defendants induced the plaintiff's employer to fire him in retaliation for his attempted exercise of his right as a stockholder to inspect corporate records,[7] and

---

[6] *Huston v. Trans-Mark Services,* 45 Or App 801, 609 P2d 848, *rev den* 289 Or 587 (1980).

[7] *Campbell v. Ford Industries, Inc.,* 274 Or 243, 546 P2d 141 (1976).

where the chief operating officer of the employer created false information about the employee to justify the employer's firing of him.[8] In each of the above examples, the supervisor or coemployee acted contrary to the employer's interests and beyond the authority granted by the employer. Each agent therefore became a "third party" to the contract for purposes of the tort.

We followed that rule in *Boers v. Payline Systems, Inc.*, 141 Or App 238, 918 P2d 432 (1996). In that case, we held that the plaintiff could recover on a theory of intentional interference with an employment contract against a supervisor who fired him for reporting another corporate agent's misconduct to the members of the board of directors of the employer. The issue was whether the plaintiff alleged a third-party interference and turned on the defendant's authority as an agent for the corporation in light of his motivation for firing the plaintiff. Holding for the plaintiff, we reasoned:

> "A corporate agent who induces a corporation to breach a contract with another party cannot be liable for intentional interference with that contract if the agent acted in the scope of the agent's employment. In that situation, the agent *is* the corporation. While a party to a contract may breach it, it is logically impossible for a party to interfere tortiously with its own contract. However, if the agent's sole purpose is one that is not for the benefit of the corporation, the agent is not acting within the scope of employment and *may* be liable." *Id.* at 242-43 (second emphasis added).

The defendant in *Boers* acted to cover up the fact that a former employee had transferred money belonging to the employer into the account of his current employer. That kind of conduct clearly violated an established standard of business and may have constituted an embezzlement or conversion of the employer's property. Because the underlying *conduct* was tortious in nature, a claim for intentional interference with an economic relationship existed.

---

[8] *Giordano v. Aerolift, Inc.*, 109 Or App 122, 818 P2d 950 (1991).

Here, we are faced with a different issue from that in *Boers*. Assuming without deciding that McLain is a third party to plaintiff's employment relationship because he was prompted to fire plaintiff to protect the value of his own stock, plaintiff must still prove a tortious interference with a cognizable economic interest arising from his relationship with Oba. Because he cannot prove tortious conduct or "means" on the part of McLain, he must prove a "tortious motive." That requires proof that the motive is wrongful beyond the fact of the interference itself. That requirement means that the third party's motive must be contrary to "a statute or other regulation, or recognized rule of common law, or perhaps an established standard of a trade or a profession." *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or 201, 209-10, 582 P2d 1365 (1978). "Improper means" commonly include violence, threats, intimidation, deceit, fraud, bribery, unfounded litigation, defamation and using disparaging falsehoods. *Id.* at 210 n 11. The proof of an improper or wrongful motive must be of a similar nature to demonstrate the "tortiousness" of the interference. Ultimately, the test for whether a motive is tortious is to ask whether the motive "would be tortious on the part of an unprivileged defendant." *Id.* at 210. The facts in *Uptown Heights Associates* illustrate a motive that was not tortious in nature. The bank interfered in a manner permitted by its contract with the plaintiffs, and with a motive that was nontortious, *i.e.*, self-interest in asserting its contractual rights. In contrast, the facts in *Boers* illustrate a tortious motive, *i.e.*, to cover up wrongdoing against the employer, which is a motive contrary, at a minimum, to "an established standard of a trade or profession" and which may have been a motive contrary to law or other regulation.

Here, as in *Uptown Heights Associates*, there is nothing tortious about McLain's motive in acting for his self-interest. McLain was plaintiff's supervisor and acted within the authority granted to him by Oba when he fired plaintiff. There is no evidence that Oba disapproved of McLain's action. Moreover, the fact that McLain's action was based on self-interest, as plaintiff asserts, does not make his conduct tortious. Selfish motives, even if morally reprehensible, are commonplace in the business world. For instance, the bank

in *Uptown Heights Associates* acted in its self-interest, but it was held not to have acted tortiously.[2] In my view, plaintiff cannot make out a claim for intentional interference with economic relations on these facts, even in light of McLain's allegedly selfish motivations. It may be that a trier of fact could conclude that plaintiff was performing his employment duties properly, but pursuant to his at-will employment agreement, he was subject to termination regardless of the adequacy of his performance. Said another way, because the *conduct* of firing plaintiff did not violate a statute, an administrative rule, a recognized rule of common law, or a recognized business or trade standard, and the *motive* for firing plaintiff *also* did not violate any standard derived from the above sources, the interference was not wrongful beyond the fact of the interference itself.

For these reasons, I dissent from the majority's decision to reverse the trial court's summary judgment ruling on the intentional interference with economic relations claim.

---

[2] Defendants' argument is based, in part, on our statement in *Sims,* 148 Or App at 364-65, in which we said, "[S]o long as the actor's actions are within the scope of his authority and are undertaken as least in part to further the best interests of the employer, it is immaterial that the actor has additional motives." *Sims* involved the issue of whether the third-party element of the tort was met. In that case, the plaintiff's own evidence demonstrated that she was terminated, at least in part, because she was a troublemaker at work. There was no evidence that the alleged third party acted solely for his own interest. The uncontroverted evidence in the summary judgment record in this case is that McLain acted within the scope of his authority as the managing shareholder and at least in part for the interests of Oba when he fired plaintiff. Defendants argued to the trial court that that evidence disposed of the improper motive issue as well as the third-party issue.